467 A.2d 371

**Kathryn WITMAYER**

v.

**Francis P. WITMAYER, Appellant.**

Superior Court of Pennsylvania.

Submitted June 1, 1983.

Filed Oct. 14, 1983.

W.J. Krencewicz, Shenandoah, for appellant.

Anthony J. Miernicki, Shenandoah, for appellee.

Before ROWLEY, WIEAND and BECK, JJ.

BECK, Judge:

This is an appeal from an order awarding custody of a five-year-old boy, Francis David Witmayer (Frank), to his mother, appellee Kathryn Bernadette Witmayer (Kathryn).

After conducting an independent review of the record, we affirm the trial court.

In addition to Frank, Kathryn is the mother of Josette, a child of her first marriage who was twelve-years-old at the time of the hearing. In 1972 Kathryn married appellant Francis P. Witmayer (Francis), who adopted Josette. In 1977 Frank was born. Francis and Kathryn separated in November 1977, and were divorced in 1978. By informal agreement of the parties, the two children resided with Kathryn.

On February 5, 1982, Frank and Josette visited Francis for a weekend. At the end of the weekend, he returned Josette, but not Frank. On February 22, 1982, Kathryn instituted this action seeking legal custody of Josette and Frank.

After a pre-trial conference before a master on May 7, 1982, the parties agreed to an interim order. Frank would remain with Francis, subject to visitation rights for Kathryn. Josette would remain with Kathryn, subject to visitation rights for Francis. This arrangement would continue until a full hearing on the merits and a decision by the trial court.

The custody hearing was held on September 23, 1982. Francis informed the trial court that he would contest only the custody of Frank. After hearing testimony, the trial court awarded custody of both Josette and Frank to Kathryn.

On October 4, 1982, this Court, upon petition of Francis, stayed the lower court order pending the outcome of this appeal.

Francis makes the following arguments on appeal: 1) that the informal custody agreement made by the parents at the time of separation has no force and effect; 2) that the interests of Frank are best served by awarding custody to him; 3) that Kathryn is not a fit person to have custody of Frank; and 4) that there is no competent evidence to

support the finding by the lower court that Francis presently has a serious mental health problem.*

 In custody disputes between parents, the standard for decision is the best interests of the child, including his or her physical, intellectual, emotional, and spiritual well-being. *In re Arnold,* 286 Pa.Super. 171, 428 A.2d 627 (1981). Each parent shares the burden of proving, by a preponderance of the evidence, that an award of custody to him or her would serve the best interests of the child. *Ramos v. Rios,* 249 Pa.Super. 487, 378 A.2d 400 (1977).

This Court clearly set forth in *Robert H.H. v. May L.H.,* 293 Pa.Super. 431, 433–434, 439 A.2d 187, 188–189 (1981) our broad scope of review in child custody proceedings:

Our scope of review in custody disputes is very broad. *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977); *Commonwealth ex rel. Myers v. Myers,* 468 Pa. 134, 360 A.2d 587 (1976). We will review the record very closely not with a mind toward usurping the the fact-finding function of the trial court, but with a responsible eye searching to ferret out what is in the "best interest of the children." *In re Custody of White,* 270 Pa.Super. 165, 411 A.2d 231 (1979). Accordingly, we are not bound by the deductions and inferences made by the judge who heard the dispute. *Trefsgar v. Trefsgar,* 261 Pa.Super. 1, 395 A.2d 273 (1978); *Commonwealth ex rel. Ulmer v. Ulmer,* 231 Pa.Super. 144, 331 A.2d 665 (1974). Thus, we make an independent review of the evidence and render an independent judgment which will assure that the Commonwealth's justifiable concern for the health and safety of its children is met. *Spells v. Spells,* 250 Pa.Super. 168, 378 A.2d 879 (1979) .... We

* While the lower court found Francis has a serious mental health problem it noted that this factor was not determinative in ordering that custody remain with Kathryn. The lower court opinion itself states: "Even if there were no allegations of unfitness or psychological problems, for the reasons contained in the rest of this opinion, the Court would still award custody to the mother." Trial court opinion at 29. Therefore, this Court need not review the finding of the lower court with reference to Francis' mental health.

shall approach this review with an open mind and will not adhere to an abuse of discretion standard. Simply stated, our broad scope of review encompasses but it is not limited to the narrow scope of review described by the term abuse of discretion. *Commonwealth ex rel. Berman v. Berman*, 289 Pa.Super. 91, 432 A.2d 1066 (1981). To reason in any other manner contradicts the very essence of our standard of review in custody cases. *In re Jennifer Lynn Arnold, Appeal of Merrill S. Arnold*, 286 Pa.Super. 171, [176], 428 A.2d 627, 629 (1981) (HOFFMAN, J., Concurring Opinion); *Commonwealth ex rel. E.H.T. v. R.E.T.*, 285 Pa.Super. 444, [458], 427 A.2d 1370, 1376 (1981) (HOFFMAN, J., Concurring Opinion).

## INFORMAL CUSTODY AGREEMENT

Francis notes that at the time he took physical custody of the child, the parties were operating under an informal agreement; no legal determination as to custody had been made. He therefore argues that he had as much right to physical custody of Frank as Kathryn did. Francis urges us to accept the proposition that custody agreements which are made informally as opposed to court ordered ones should have no force and effect. Therefore, he was under no obligation to return Frank after his weekend visit although such refusal clearly violated the informal agreement. We find no merit in this argument.

If informal custody agreements have no force and effect, then parents can engage in self-help, breach an agreement at will, and suffer no detriment. This would discourage orderly private settlements of disputes and potentially expose a child to greater instability, disruption and discord.

The law looks with favor upon resolutions of custody disputes that are settled privately. *Warman v. Warman*, 294 Pa.Super. 285, 439 A.2d 1203 (1982). It is desirable for divorcing parents to settle their differences without the intervention of the court system wherever possible. There are good reasons why these private agreements serve the best interests of the child:

First, most parents genuinely love their children, and it is reasonable to assume that the children's welfare is a vital consideration in the parents' decision to resolve their dispute by agreement. One major reason that parents agree on custody is to spare their children the trauma inherent in an adversarial hearing. Second, parents have a better informational base upon which to make a decision about custody. The adversarial process is an inadequate means to assemble sufficient "facts" to resolve custodial disputes satisfactorily. Third, it is difficult to protect a child from the painful pull of divided loyalties when his parents fail to agree. Parental agreements help to preserve an atmosphere of at least superficial peace between parents and thereby facilitate a much easier and more meaningful future relationship between the child and the non-custodial parent. An unusually sensitive statement of these factors was offered by an Illinois court:

> [T]he virtues of parental agreement are strong, and the law appreciates them .... The parents obviously know more about the family than a judge is likely to learn in a short, formal hearing. In a more or less amicable dissolution, the parents' natural desire to do what is best for their children gives any agreement about custody great weight as an indicator of what is in the best interest of the children. Moreover, amicable settlement of custody arrangements is a good thing in itself, for peace between the parents must benefit the children; and a court will hesitate to tamper with what may be a fragile agreement, worked out only with difficulty.

Sharp, *Modification of Agreement—Based Custody Decrees: Unitary or Dual Standard?*, 68 Va.L.Rev. 1263, 1280 (1982) (footnotes omitted).

Divorced or separated parents usually differ on questions relating to their children. For those parents to work out a mechanism themselves whereby they resolve those conflicts privately is to be encouraged. Such a mechanism, once forged, may set a pattern for resolution of later disputes as

they arise. Such resolutions frequently result in informal agreements. This is not to deny that many divorced or separated parents will not be able to settle their differences without the intervention of the court system. The law should not impede, however, those parents who are able to forge a mechanism for private dispute resolution.

■ What effect should the law give these informal agreements? If the bargaining power of each parent at the time of making the agreement is roughly equal then such agreement ought to represent evidence of the parties' intention as to custody of the child and the court should give substantial weight to such agreements. Of course, if circumstances change after the making of the agreement or if the parties did not have roughly equal bargaining power at the time of making the agreement, then lesser or no weight should be afforded the agreement.

If such an agreement is breached, as here, how should the court view the unexcused actions of the party breaching the agreement?

Guidance is provided in *In re Leskovich*, 253 Pa.Super. 349, 385 A.2d 373 (1978). As in the instant case, the parents in *Leskovich* operated under an informal agreement as to custody. In *Leskovich*, this Court held that upon remand the trial court, in evaluating the father's fitness as a custodial parent, should consider that the father breached the agreement and resorted to self-help which disregarded the orderly process of dispute resolution. *Id.*, 253 Pa.Superior Ct. at 359, 385 A.2d at 378.

■ Applying *Leskovich* to the instant matter, we conclude that when Francis sought custody of Frank, the appropriate step was to renegotiate the agreement with Kathryn. If that failed, he should then have resorted to a resolution within the court system itself. Removal of a child in contravention of an informal custody agreement is a fact that the trial court should consider in evaluating parental fitness.

## BEST INTERESTS OF FRANK

■ Francis asserts that the best interests of Frank would be served by awarding custody to him. We disagree. He notes that he is home full time. He receives a veterans disability pension and does not work. Unlike Kathryn who works and places Frank in day-care, he would devote almost all of his time to the boy. "The fact that a parent must work is certainly not a factor that may be used to deprive the parent of custody where adequate arrangements have been made for the child's care in the parent's absence." *Hooks v. Ellerbe*, 257 Pa.Super. 219, 224, 390 A.2d 791, 794 (1978), *rev'd on other grounds*, 490 Pa. 363, 416 A.2d 512 (1980).

■ Francis also charges that Kathryn goes out socially some evenings and that she used to attend a ceramics class. The record reveals that Kathryn always has provided for Frank's care when she is out of the home and that her activities have not had a deleterious effect on Frank's normal development. The mere fact of her occasional evening absences from home without evidence of a negative effect on the child will not support a custody award to the father. *Commonwealth ex rel. Pierce v. Pierce*, 493 Pa. 292, 426 A.2d 555 (1981).

■ Francis accurately notes that Frank expressed a preference to remain with him. Frank was interviewed in chambers by the trial court in the presence of counsel for both parties. While the preference of the child is one factor, the weight to be accorded this preference will vary according to the age, intelligence, and maturity of the child as well as the reasons given for the preference. *In re Custody of Pearce*, 310 Pa.Super. 254, 456 A.2d 597 (1983) (quoting *Commonwealth ex rel. Pierce v. Pierce*). In the instant case the lower court properly did not make the child's preference determinative for the following reasons:

■ The lower court noted that Frank appeared immature during the interview. In response to questions of why he preferred to live with his father, he stated that he would be

able to pick potatoes and corn and that there were many farms in the vicinity of his father's home. Notes of Testimony (N.T.) at 126–127. In addition, Frank's testimony revealed that his father had recently bought him gifts and that he had been instructed as to what to say at the interview. *Id.* at 126, 128, 132.

In making its award the lower court properly recognized that continuity and stability are important elements in a young child's emotional development. *Commonwealth ex rel. Jordan v. Jordan,* 302 Pa.Super. 421, 448 A.2d 1113 (1982); *In Interest of Tremayne Quame Idress R.,* 286 Pa.Super. 479, 429 A.2d 40 (1981).

In addition, absent compelling reasons to the contrary, it is best for siblings, even half-siblings, to be raised together. *Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 421 A.2d 157 (1980). Francis urges us that the latter principle is attenuated because there is a seven year age difference between Frank and Josette. Without more, we do not find this to be a compelling argument justifying separating them.

## KATHRYN IS UNFIT

Francis contends that Kathryn is an unfit parent on two grounds: that Kathryn has been irresponsible in her care of her children in the past, and that she presently has a meretricious relationship with a man named Jake.

Francis testified that in 1970, after he and Kathryn began living together she left Josette in the care of a neighbor. N.T. at 97. He quoted Kathryn as saying about Josette: "I don't need her." *Id.* Kathryn testified that the neighbor merely babysat while she worked. *Id.* at 37. Assuming, *arguendo,* that Francis' version is correct, it has no bearing on the awarding of custody in this case. As this Court has stated:

> The primary concern in custody matters lies not with the past but with the present and future. *Hooks v. Ellerbe,*

257 Pa.Super. 219, 390 A.2d 791 (1978), reversed on other grounds 490 Pa. 363, 416 A.2d 512 (1980). Facts *as of time of hearing* are the foundation for determination of the court. *Augustine v. Augustine,* 228 Pa.Super. 312, 324 A.2d 477 (1974). Past conduct is not relevant unless it will produce an ongoing negative effect on the child's welfare. *In re Leskovich,* 253 Pa.Super. 349, 385 A.2d 373 (1978).

*Commonwealth ex rel. Gorto v. Gorto,* 298 Pa.Super. 509, 514, 444 A.2d 1299, 1301 (1982) (emphasis in original).

Kathryn's alleged conduct occurred more than ten years ago and related to Josette, not to Frank. More important, she has been a good parent to Frank and Josette. The record indicates that Frank was well cared for and happy at the time Francis seized physical custody. N.T. at 66.

In addition, Francis stated that he did not return Frank because of Kathryn's alleged extra-marital relationship with a man named Jake which reflected negatively on her fitness. *Id.* at 83. Francis' allegations as to Kathryn's unfitness, however, as the lower court found, were not substantiated at trial. Josette testified that Jake had never slept over at Kathryn's house. *Id.* at 75. The trial court correctly concluded that there is no evidence that Kathryn's relationship with Jake had a negative effect on Frank. In his brief, Francis simply states that the relationship is "certain to have an adverse effect on the morals of impressionable children." Appellant's brief at 34–35. With regard to a non-marital relationship, the law does not presume that such a relationship will in and of itself have an adverse impact on a child. *In re Custody of Temos,* 304 Pa.Super. 82, 450 A.2d 111 (1982). The negative effect must be established by competent evidence.

The decision of the lower court is affirmed.

ROWLEY and WIEAND, JJ., concurred in the result.