## Blankley v. Blankley

*Barbara B. Townsend,* for plaintiff.
*Steven P. Blankley,* in propria persona.

KAYE, *J.,* October 22, 1993—This custody action was initiated on April 12, 1993 with the filing of a complaint by Karen D. Blankley, plaintiff, against her husband, Steven P. Blankley, defendant. Plaintiff seeks primary physical custody of the parties' two natural children, Steven, age 7, and Christopher, age 5. A temporary custody order was entered providing for alternating weeks of physical custody by the parties. This schedule was to commence on Sunday, April 18, 1993, with custody first being exercised by plaintiff. The defendant's failure to abide by the temporary order resulted in the filing of a petition for contempt by plaintiff on June 2, 1993. The court subsequently entered an order on June 29, 1993 providing that plaintiff would be entitled to exercise custody for the following six weeks, with alternating weekend visitation by the defendant. The six-week custody period was ordered to compensate for the period of time during which the defendant refused to allow plaintiff to see the parties' children. Beginning on Friday, August 6, the alternating weekly custody schedule resumed.

A hearing was conducted in this matter before the undersigned on July 8, 1993. Plaintiff was represented by counsel at the hearing, with the defendant appearing pro se. Based on the evidence adduced at hearing and the uncontroverted pleadings of record, the court enters the following:

## FINDINGS OF FACT

(1) The parties were married on April 18, 1984 and are the natural parents of Steven P. Blankley II, born August 2, 1986 and Christopher J. Blankley, born January 8, 1988.

(2) Plaintiff was born on January 10, 1967 and has resided at HCR 81, Box 34, Needmore, Fulton County, Pennsylvania since March 20, 1993.

(3) Defendant is 32 years of age and resides in the marital home at R.D. #1, Box 1435, Warfordsburg, Fulton County, Pennsylvania.

(4) The parties' current residences are located approximately seven miles apart and are both within the Southern Fulton School District.

(5) Plaintiff permanently separated from her husband on March 20, 1993 and has resided with her parents since that date. She is a high school graduate and has been employed by Fleetwood Travel Trailers in Hancock, Maryland since 1991. Her work hours are from 7 a.m. to 3:30 p.m., Monday through Friday.

(6) Plaintiff currently resides with her parents in a three-bedroom rancher with a dining room, kitchen, living room, two baths and finished basement. The home is located on three acres of land with a large mowed area for outdoor activities. A volleyball net is set up in the yard. The children share one of the bedrooms in the house during plaintiff's periods of custody.

(7) Plaintiff plays volleyball with her sons, attends their baseball games, plays baseball, swims and reads with them. She attends religious services at the Grace Nazarene Church in Hancock, Maryland.

(8) Prior to the parties' separation, plaintiff was the primary caretaker of the children. She picked the children up at the babysitter's after work, made their meals, bathed them and put them to bed. Plaintiff helped Steven, who attended first grade during the 1992-93 school year, with his schoolwork on a daily basis.

(9) Plaintiff's parents keep guns in their home, however, they are kept in a location which is secured with a lock.

(10) Plaintiff is a cigarette smoker, but does not smoke in the house or vehicle when the children are present.

(11) Plaintiff's sister, Tammy L. Garland, babysits in her home for Steven and Christopher from 6:15 a.m. until 3:45 p.m. on weekdays during plaintiff's exercise of custody. Ms. Garland has cared for the children since 1991 when plaintiff became employed with Fleetwood Travel Trailers. Ms. Garland has a small swimming pool, riding toys and a playhouse at her home. She is married and has a 1-year-old child.

(12) Defendant resides in a 14 by 70 foot mobile home, with a bedroom addition. The residence is located on 72 acres of land, with a large outdoor area for play. The mobile home has a living room, kitchen/dining area, all purpose room with toys, two bedrooms and two baths.

(13) Prior to their separation, the parties had resided in the previously described mobile home for approximately one year. They previously resided for eight years with defendants' parents in a home located on the same property.

(14) Defendant is a high school graduate and has been employed by Rayloc throughout the parties' marriage. His work schedule is from 7:30 a.m. until 4 p.m., Monday through Friday.

(15) Prior to their separation, defendant would wake the children in the morning, get them dressed and take them to the babysitter's home. He would also help occasionally with Steven's schoolwork. Since the parties' separation, defendant takes the children to another babysitter during his periods of custody. He plans to have his niece, Wanda Wagaman, babysit the children in his home if he is awarded custody.

(16) Defendant takes the children miniature golfing and has taken them to the zoo during his exercise of custody. Defendant also purchased a horse for Steven in April 1993.

(17) Defendant attends Faith Assembly Church on Saturday, Sunday and Wednesday evenings. He also attends religious revivals when they are scheduled. Defendant began attending church shortly after the parties separated.

(18) Prior to the parties' separation, defendant kept 12 guns in the marital home within reach of the children. He now has only one gun, which is owned by his father.

(19) Defendant was hospitalized for depression during the first week of February 1993 following the parties' initial separation on January 30, 1993. Prior to his voluntary hospitalization, defendant had threatened to commit suicide. Defendant was given anti-depressant medication during his hospitalization, the use of which he discontinued two weeks after his release.

(20) Defendant has an alcohol problem and has been advised to regularly attend Alcoholics Anonymous

meetings. He attended the meetings for a short time, but has not participated since March 22, 1993. His stated reason for failing to attend is that the smoking which occurs at the meetings aggravates his asthma condition. Defendant stopped drinking after the parties' second separation on February 20, 1993.

(21) Defendant has periodically beaten plaintiff during their marriage and is currently on probation as a result of "shaking" his wife.

(22) Both parents discipline the children by withholding privileges, standing them in the corner or spanking them. Defendant tends to hit the children more severely when he is drinking and admits to having gotten "carried away" with disciplining them on occasion.

(23) Subsequent to the parties' separation, defendant has called plaintiff "the devil" and asserted that God is on his side, within hearing range of the children.

(24) In the year prior to January, defendant drank in front of the boys a couple of hundred times. He normally consumed a 12-pack of beer per evening and three or four cases of beer during a weekend.

(25) The court's custody mediation officer, Eugene H. Stecher, has made the following recommendation:

"Because of favorable geographic circumstances and good individual parent/child relationships I would like to be able to recommend joint legal and residential custody on an alternating two week basis with one evening per week with the non-residential parent. However, poor parental communication and the father's extremely negative attitudes toward mother push me in the direction of recommending a primary/partial arrangement.

"(1) Joint legal custody.

"(2) Primary residential custody to mother and partial custody to father as follows: every other weekend and equal time on holidays and during school vacations and the summer months.

"(3) Individual counseling for father to help him cope with feelings of loss and rejection and to plan cooperatively for the children's future."

## DISCUSSION

The paramount consideration in reaching a determination in a custody action between two parents is the best interest and welfare of the children. *Boylan v. Boylan,* 395 Pa. Super. 280, 577 A.2d 218 (1990). The children's physical, intellectual, emotional and spiritual well-being are all elements for consideration by the court. *Witmayer v. Witmayer,* 320 Pa. Super. 372, 467 A.2d 371 (1983). Each party bears an equal burden of proving, by a preponderance of the evidence, that an award of custody to him or her would serve the best interests of the children. *Id.* Where both natural parents are fit, however, the court must give positive consideration to the parent who has been the primary caretaker. *Fisher v. Fisher,* 370 Pa. Super. 87, 535 A.2d 1163 (1988).

In the instant case, while both parents lived with the children prior to the parties' final separation in March 1993, it appears that plaintiff provided the majority of caretaking duties for the children. Defendant's primary contribution consisted of taking the children to the babysitter's in the mornings and occasionally assisting Steven with his homework. To defendant's credit, however, we observe that he has exercised custody of the children since the parties' separation, with no serious allegations of deficient care of the children during those periods of time. A parent's ability to care for his children

must be evaluated at the time of the custody hearing. *Brooks v. Brooks,* 319 Pa. Super. 268, 466 A.2d 152 (1983). Defendant denies plaintiff's allegation that the boys were only provided candy bars for lunch. He testified that Steven's school lunch normally includes a sandwich, Snickers bar, pudding and milk, which is purchased at school.

The parties' homes both appear to provide adequate shelter for the children and necessities to meet their daily needs. Both parties are financially capable of caring for the children. The record reflects that adequate day care would also be provided, as needed, by each of the parties, during their periods of custody. Both parties also reside in the same school district, so that a change in schools will not be required by our custody decision.

Our primary concern in this case centers around the defendant's recent history of alcohol abuse, as well as the emotional difficulty which he has displayed in connection with the marital separation initiated by his wife. Defendant contends that his alcohol consumption has ceased since the separation. While we certainly commend defendant's apparent recognition of his drinking problem, and acknowledge that custody decisions are to be based on the facts as they exist at the time of hearing, *Bresnock v. Bresnock,* 346 Pa. Super. 563, 500 A.2d 91 (1985), we are also cognizant that the past behavior of a parent may be considered as predictive of future behavior. *Commonwealth ex rel. Jordan v. Jordan,* 302 Pa. Super. 421, 448 A.2d 1113 (1982). We are particularly troubled by assertions that defendant's drinking has been associated with more severe forms of punishment of the children. Plaintiff asserts that defendant left welts on one of the children at a time when he had been drinking.

Our concerns also extend to defendant's apparent emotional difficulty in accepting the marital separation. As noted earlier in the opinion, defendant denied plaintiff any contact with the children for a significant period of time, at least six weeks in duration, following their separation. Furthermore, conduct of the defendant during his direct testimony in court, which was at times rambling and incoherent, failed to convince the court that his emotional problems have been ameliorated. Moreover, use of his recent religious conversion to criticize the plaintiff in front of the children, referring to her as "the devil," must be viewed with seriousness insofar as its impact on the children is, most certainly, negative.

We recognize that defendant's present emotional state may be temporary in nature and that his love for his children is undoubtedly sincere. We, nevertheless, believe that the best interests of the children dictate that primary physical custody be awarded to the plaintiff at the present time. The parties will be granted joint legal custody of their children. We will, also, grant defendant liberal summer and weekend visitation, per the attached order, during which times defendant will be prohibited to ingest alcoholic beverages.

## ORDER

Now, October 22, 1993, it is ordered and decreed that:

(1) Plaintiff, Karen D. Blankley and defendant, Steven P. Blankley, shall have shared legal custody of their minor children, Steven P. Blankley II, born August 2, 1986 and Christopher J. Blankley, born January 8, 1988.

(2) Primary physical custody of Steven and Christopher is awarded to plaintiff.

(3) Partial physical custody is awarded to defendant as hereafter provided:

(A) Every other weekend between the hours of 7 p.m. on Friday and 7 p.m. on Sunday;

(B) During the summer, defendant shall be granted six weeks of partial custody with Steven and Christopher subject to plaintiff's right to visitation with the children on alternating weekends between the hours of 7 p.m. on Friday and 7 p.m. on Sunday;

(C) Defendant shall notify plaintiff no later than May 15 of his intentions with respect to what period of time he will exercise his summer visitation;

(D) Plaintiff shall have physical custody of Steven and Christopher from 9 a.m. to 9 p.m. on Thanksgiving, Easter and Labor Day in odd-numbered years and on New Year's Day, Memorial Day and July 4 in even-numbered years;

(E) Defendant shall have physical custody of Steven and Christopher from 9 a.m. to 9 p.m. on New Year's Day, Memorial Day and July 4 in odd-numbered years and Easter, Labor Day and Thanksgiving in even-numbered years;

(F) Plaintiff shall have physical custody from 6 p.m. on December 23 to 1 p.m. on December 25 in odd-numbered years and from 1 p.m. on December 25 to 9 p.m. on New Year's Day in even-numbered years;

(G) Defendant shall have physical custody from 6 p.m. on December 23 to 1 p.m. on December 25 in even-numbered years and from 1 p.m. on December 25 to 9 p.m. on New Year's Day in odd-numbered years;

(H) Plaintiff shall have physical custody of Steven from 9 a.m. until 3 p.m. on August 2 (Steven's birthday)

in odd-numbered years and from 3 p.m. until 9 p.m. on August 2 in even-numbered years;

(I) Defendant shall have physical custody of Steven from 9 a.m. until 3 p.m. on August 2 (Steven's birthday) in even-numbered years and from 3 p.m. until 9 p.m. in odd-numbered years;

(J) Plaintiff shall have physical custody of Christopher from 9 a.m. until 3 p.m. on January 8 (Christopher's birthday) in odd-numbered years and from 3 p.m. until 9 p.m. in even-numbered years;

(K) Defendant shall have physical custody of Christopher from 9 a.m. until 3 p.m. on January 8 (Christopher's birthday) in even-numbered years and from 3 p.m. until 9 p.m. in odd-numbered years;

(L) Holiday visitation schedules shall take precedence over any previously mentioned weekend or summer visitation custody;

(M) Each party shall give at least 24 hours notice of their inability to exercise any of the visitation schedule called for by this order.

(4) The parties shall consult with one another regarding matters of major importance in Steven and Christopher's lives, this to include medical, educational and health concerns.

(5) Neither party shall attempt to undermine the mutual love and affection that Steven and Christopher have for the other parent, and neither party shall, in the presence of Steven and/or Christopher, make any disparaging or negative remarks concerning the other party or the other party's family.

(6) The party not currently exercising physical custody of Steven and/or Christopher shall be permitted reasonable telephone communications with Steven and/or Christopher. If these rights are not extended,

the court will make an order specifying specific days and times when this telephone communication may occur.

(7) The parties shall share equally in the transportation of Steven and Christopher. All pick-up and delivery times referred to in the body of this order shall be strictly adhered to.

(8) Neither party shall employ excessive or inappropriate physical punishment in dealing with Steven and Christopher.

(9) Defendant shall not ingest alcoholic beverages during those periods when he exercises care and custody of Steven and/or Christopher, nor during any time prior thereto that will affect him during his exercise of custody of the children, or either of them.

(10) Neither party shall permit unsupervised access by Steven or Christopher to guns or ammunition during their exercise of custody.

(11) Defendant shall undergo appropriate family counseling to facilitate his emotional adjustment to family circumstances in relation to his wife and children.

(12) The costs of this proceeding, including the cost of the court's child mediation officer and filing costs, shall be paid equally by the parties.