### Kalin v. Kalin

C.P. of Delaware County, no. 92-14915.

*Joseph M. Lamonaca,* for appellant.
*Thomas Tropp,* for appellee.

JENKINS, *J.*, February 22, 1995—Appellant/father and appellee/mother are the parents of one minor child, Jessica, born January 30, 1991. The parties separated in mid-1992 when father left the marital residence in Springfield, Pennsylvania and temporarily moved in with his parents in Darby, Delaware County, Pennsylvania. Shortly thereafter mother filed a complaint in divorce containing a request for confirmation of custody. In December of 1992 father

initiated a separate custody action. In his complaint he agreed that Jessica had resided at the Springfield home with mother since birth.

The parties attended a conciliation conference with the custody master, but were unsuccessful in resolving their differences and requested that the matter be listed for hearing before a judge of this court.

At the pre-trial conference, it was agreed that a "socio-psychological evaluation" would be completed and that the parties' cross petitions for custody would be consolidated for purposes of trial. On April 21, 1993 an order was entered embodying these agreements.

The custody evaluation was then completed and the case was placed on the June 1993 trial list. When the case was brought to trial, the parties indicated to this court that a settlement was possible and requested an additional conference. At the conclusion of the conference, the parties informed the court that a settlement embodying a shared custody arrangement had been achieved. The matter was therefore removed from the trial list.

Father's attorney prepared a proposed order embodying the agreement and submitted it to the court for signature.[1] It was signed in July 1993. Father neither initiated an appeal nor requested reconsideration of the order.

At some point father then changed counsel and, through his new counsel, father filed a "motion for custody hear-

---

1. Although the agreement was neither placed on the record nor did either of the parties sign it as required by Pa.R.C.P. 1915.7, the order was drafted by husband's attorney and the parties operated pursuant to its terms for 10 months without either appeal or request for reconsideration. The parties have thus waived their right to object to this procedural deficiency.

ing" in May 1994. This court denied father's motion because it reflected obvious confusion regarding the procedural posture of the case. The motion itself requested a hearing on the initial cross complaints and alleged that they had never been resolved.

After the court pointed out that father's prior counsel had obtained an order resolving those complaints one year earlier, father's new counsel filed a petition for custody modification seeking primary custody and complaining that he never had a full hearing in 1993.

Following another pre-trial conference, trial was scheduled for October 1994. At the request of father's counsel, this hearing was postponed until December 1994 when the case was heard. After listening to the testimony and considering the stipulations of the parties, on December 13, 1994 this court denied father's request to change from a shared custody arrangement to a situation in which he was primary custodian of the parties' minor child.

Father initiated a timely appeal, thus necessitating this opinion.

Father lists many complaints on appeal, all of which can be consolidated into three allegations of error.

First, father complains that this court erroneously ruled that the custody action was concluded in 1993 and that father's application should be characterized as a petition to modify. A review of the record indicates this court's action was procedurally correct. The parties were subject to an existing custody order and had been operating pursuant to that order for almost one year. Father wished to seek a change in the order from shared custody to primary custody. A petition for modification is the appropriate way in which to change an existing custody

or visitation order. *Choplosky v. Choplosky*, 400 Pa. Super. 590, 584 A.2d 340 (1990); *Seger v. Seger*, 377 Pa. Super. 391, 547 A.2d 424 (1988).

Nevertheless, father's suggestion that the name of the petition somehow dictates the proof is erroneous. Regardless of the caption on the petition, the court is required to inquire into the best interests of the child. It makes no difference whether the court is making an initial assessment of the child's situation or conducting a subsequent review. *Karis v. Karis,* 518 Pa. 601, 544 A.2d 1328 (1988); *Jaindl v. Myers,* 520 Pa. 147, 533 A.2d 407 (1989); *Martin v. Martin,* 386 Pa. Super. 328, 562 A.2d 1389 (1989). Therefore, father's complaint that the court required him to inappropriately title his petition is not only procedurally incorrect, but likewise lacks substantive merit.

Next, father complains that this court erred in permitting the 1993 order to operate as a "final order" when it failed to explicitly designate one parent as the primary physical custodian or to set forth holiday and vacation schedules with particularity. The 1993 order became a "final order" in terms of civil procedure when it was neither appealed nor reconsidered within 30 days after its entry. It was therefore a "final order" in the technical sense of the word. There is no requirement that custody orders name a primary custodian or include holiday and vacation schedules. Regardless, if father felt that the order was deficient in any way he could have appealed or requested reconsideration. He did neither. As a matter of fact, the first time these issues were raised was in father's 1925(b) statement on appeal a year and a half later following adjudication of a subsequent petition. He never indicated to the court below that he wished these matters to be incorporated into a custody order and has therefore waived his right

to do so for the first time on appeal following hearing of a subsequent matter.

More importantly, father overlooks the fact that the order can be changed at any time if modification is in the child's best interest. *Martin, supra.* Therefore, in the practical sense, no custody order is final, because all are subject to modification if a preponderance of the evidence demonstrates that the child's best interest requires it. If father believes it necessary to implement a vacation and holiday schedule by order of court rather than by agreement, he is free to file a request for same at any time. However, mother's uncontradicted testimony at hearing was that holidays had been resolved by agreement of the parties and were not problematic. Father cannot justifiably complain on appeal that he failed to obtain relief for which he never asked. The second complaint is therefore without merit.

Finally, father complains that the court's decision was against the weight of the evidence. This complaint also lacks merit.

The parties enjoyed a shared custody arrangement at the time of the hearing on father's petition to modify. Shared custody does not necessarily mean equal time, but an arrangement that insures frequent and continuing contact between the child and both parents. *V.B. v. M.L.T.B.,* 321 Pa. Super. 36, 467 A.2d 880 (1983). In every two week period, father had five overnights with his daughter and two evening visits when she did not spend the night. On each of these evenings, he usually picked his daughter up in the afternoon from her day care facility and returned her to her mother's home at approximately 8 p.m. This contact with her was admittedly

frequent and continuing. In addition, mother offered uncontradicted testimony that legal custody is also shared. (N.T. 12/13/94 at p. 20.)

Father came before the court seeking a modification so that custody would no longer be shared and he would be the primary physical custodian, although he failed to articulate his proposal with any greater specificity. He had the burden of demonstrating by a preponderance of the evidence that he is the superior parent and that an award of primary physical custody to him would serve Jessica's best interest. *Witmayer v. Witmayer,* 320 Pa. Super. 372, 467 A.2d 371 (1983). "Best interests" includes physical, intellectual, emotional and spiritual well-being. *Id.* at 377, 467 A.2d at 373.

Both parties testified at the hearing. Mother testified that she is 35 years old with a bachelor's degree in mathematics and computer science. (N.T. 12/13/94 at p. 14.) She has some credits toward her master's degree and is presently employed with the Martin Marietta Corporation, where she has worked as a software engineer for nine years. *(Id.* at pp. 14, 15.) When Jessica was born, Mrs. Kalin ceased working for a time to care for her daughter, and initially returned to work part-time. *(Id.* at pp. 29, 30.) She now works four days a week from 8 a.m. to 5 p.m. or 9 a.m. to 6 p.m. *(Id.)*

She and Jessica live together in the same suburban home where Jessica has lived since birth. Jessica has her own room, a yard and a nearby park where she can play. While Mrs. Kalin is working, Jessica spends her days at Saint Kevin's Child Care Center. *(Id.* at pp. 15, 16.) Mrs. Kalin has extended family in the area and she tries to keep Jessica in touch with them.

Mrs. Kalin indicates that she and Mr. Kalin have a "very good" level of cooperation, and there has been no problem with sharing holidays. They simply alternate. (*Id.* at p. 18.) She is satisfied with the current schedule because it enables Jessica to have a healthy, good relationship with both of her parents, and she feels Jessica has adjusted well. (*Id.* at p. 19.)

Mr. Kalin lives in a one bedroom third floor apartment, also in suburban Delaware County. (*Id.* at p. 27.) He has some college credits and is employed by the Pennsylvania State Police, where he has worked for 13 years. (*Id.* at p. 28.) He too has extended family in the area. (*Id.*) He indicates he has an excellent, warm and tender loving relationship with Jessica. (*Id.* at p. 29.) He also states that he has helped raise Jessica, and that since separation he has spent more time with her than has Mrs. Kalin, although Jessica has spent more nights at Mrs. Kalin's home. (*Id.* at p. 30.) He feels it would be appropriate to award him permanent physical custody because Jessica has been his number one priority throughout the period of marital discord. (*Id.* at p. 31.) He feels his efforts have been unappreciated. (*Id.*) He also testified that Jessica cried periodically when it was time to return her to her mother's care. (*Id.* at pp. 34, 35.)

Mr. Kalin also offered to present three additional witnesses, but this was unnecessary because Mrs. Kalin stipulated to their testimony. First, she stipulated that Mr. Kalin was a psychologically fit, emotionally stable, caring and devoted parent. She also stipulated that he is a person of good character with an excellent work ethic and a flexible work schedule. (*Id.* at p. 12.)

Although no suggestion was made that the court colloquy Jessica, she was not yet 4 years old at the time of hearing and was deemed too young to interview.

Based on the foregoing evidence, this court failed to find that Jessica's best interests would be served by awarding primary physical custody to her father. The court was faced with the fortunate situation in which both parents are good, fit, loving and able to adequately provide for the child. Under these circumstances, the court looked to some other elements in the young child's development.

First, continuity and stability are important elements in emotional development. *Witmayer, supra,* citing *Jordan v. Jordan,* 302 Pa. Super. 421, 448 A.2d 1113 (1982). Jessica has been living in one home since birth. She has been attending one day care facility. When her parents separated, they were able to agree on a shared custody arrangement that mother states is working well. Jessica has been living according to this schedule for one and a half years. Father was unable to criticize it in any way, except to say that Jessica sometimes cries at exchange time. If true, this is not so compelling an event as to warrant a complete restructuring of a working shared custody arrangement.

In addition, this child's sudden removal from the physical environment she has known since birth could certainly have an adverse impact on her well-being. *Boland v. Leska,* 308 Pa. Super. 169, 454 A.2d 75 (1982).

Finally, Mrs. Kalin was the child's primary caretaker during the initial stages of her life and has remained a constant presence. The existing shared custody arrangement allows for the continued presence of two fit parents, who through daily affection, guidance, companionship and discipline fulfill Jessica's psychological and physical needs. This surely is crucial to her well- being. *Jordan, supra.*

Mr. Kalin emphasized the flexibility of his work schedule and the extent to which he could be available to spend time with Jessica. However, Mrs. Kalin has made adequate day care arrangements during the time when she is working. In this circumstance, her employment cannot be weighed against her because her hours are less flexible than those of Mr. Kalin. *Beers v. Beers,* 342 Pa. Super. 465, 493 A.2d 116 (1985).

For all of the foregoing reasons, this court found the evidence insufficient to show that Jessica's best interests would be served by changing the current shared custody arrangement and granting primary custody to Mr. Kalin.