J-A25037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| T.C.T., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.E.T. | : | No. 918 MDA 2019 |

Appeal from the Order Entered May 7, 2019
in the Court of Common Pleas of Centre County
Civil Division at No(s): 2018-4509

BEFORE: STABILE, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED FEBRUARY 21, 2020**

T.C.T. ("Father") appeals from the May 7, 2019, Custody Order with parenting plan, which granted him and J.E.T. ("Mother"), the mother of the parties' female children, L.T. (born in March 2013), and J.T. (born in September 2015) (collectively, "Children"), shared legal custody. The Custody Order further granted Mother primary physical custody of Children, and Father partial physical custody, in accordance with a schedule set forth in the Custody Order. We affirm.

Father filed the underlying Complaint for Custody on November 13, 2018. On January 8, 2019, the trial court entered a Temporary Order governing custody for the time period between the scheduled custody conference and the custody hearing. The custody hearing commenced on April 3, 2019, and concluded on April 24, 2019.

At the April 3, 2019, hearing, Father testified on his own behalf.  Father also presented the testimony of his neighbor; his friend, B.H.; his mother, L.M.; his friend, K.K.; his friend, J.C.; and his live-in girlfriend, J.S.  Mother testified on her own behalf.  On April 24, 2019, Father testified in rebuttal, and Mother testified in sur-rebuttal to the previous witnesses' testimony.  Mother additionally presented the testimony of the Children's babysitter for both parents, C.B.; and her mother, J.N.

On May 7, 2019, the trial court entered the present Custody Order.  In the Opinion that accompanied the Custody Order, the trial court made the following findings with respect to section 5328(a) of the Child Custody Act, ("the Act"), 23 Pa.C.S.A. §§ 5321-5340, based on the testimony of the witnesses and the documentary evidence:

**1. Which party is more likely to encourage and permit frequent and continuing contact between the [C]hildren and the other party.**

Mother testified that when the [C]hildren are in her custody, she allows daily phone calls to and from Father and encourages the [C]hildren to speak with Father.  Mother also claimed that during the Christmas break, Father kept the [C]hildren and refused to return them until the older child had to return to school.  Because of this, Mother filed for Emergency Custody.  Other than this incident, the parties both seem willing and likely to permit and encourage contact between the [C]hildren and the non-custodial parent.

**2. The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the [C]hild[ren].**

An incident occurred in September of 2018[,] which resulted in both parents filing for Protection [F]rom Abuse [("PFA")] [O]rders against the other parent. Both PFAs were dropped by agreement of the parties. There was no evidence that any party has abused either of the children.

**2.1 The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).**

The [trial court] has heard no testimony regarding any involvement of Children and Youth Services.

**3. The parental duties performed by each party on behalf of the [C]hildren.**

Both parties testified to performing all parental duties when the [C]hildren are in their custody. Mother and Father both attend medical appointments, school conferences, and the [C]hildren's activities. Each parent feeds the [C]hildren, bathes them, and engages in activities such as cooking, dancing, and crafting with the [C]hildren.

**4. The need for stability and continuity in the [C]hildren's education, family life and community life.**

Mother testified that she removed the [C]hildren from gymnastics lessons because the girls were becoming too exhausted from rotating custody and attending activities and school. Mother stated the girls asked for a night to stay home and play with their toys. The older daughter allegedly asked Mother to be the one to take her to school each morning.

**5. The availability of extended family.**

Paternal grandmother lives in Howard and testified that she has a close relationship with the [C]hildren. Mother testified that her grandmother is her largest support, as she lives directly behind Mother's residence. Maternal grandparents live in Pine Grove Mills and the [C]hildren's maternal uncle lives in Lock Haven.

**6. The [C]hildren's sibling relationships.**

The [C]hildren have no other siblings. Father testified that the [] [C]hildren have an extremely close relationship.

**7. The well-reasoned preference of the [C]hildren, based on the child's maturity and judgment.**

The [trial court] did not speak with the [C]hildren due to their ages.

**8. The attempts of a parent to turn the [C]hildren against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.**

Father testified the older child has stated that Mother's family make derogatory remarks about Father.

**9. Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the [C]hildren's emotional needs.**

Both parents appear well-situated to maintain a loving and nurturing home for the [C]hildren. With regard to stability and consistency, Mother is slightly better situated, particularly during the school year, as her work schedule allows her to personally deliver the [C]hildren to school and the babysitter's residence. Mother also has the flexibility to pick up the older child at the end of the regular school day.

**10. Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the [C]hildren.**

It appears that both parents are very involved in the health, education, and activities of [the] [C]hildren and that neither is more likely than the other to attend to the [C]hildren's needs.

**11. The proximity of the residences of the parties.**

Mother testified that her residence is approximately a fifteen[-]minute drive from Father's residence.

**12. Each party's availability to care for the children or ability to make appropriate child-care arrangements.**

Father testified that his child-care plans, other than the babysitter who is utilized by both parents, would be to rely on his girlfriend or his mother. Father leaves for work early in the morning and is therefore unable to deliver the [C]hildren to school and the babysitter's residence. Father's girlfriend would be available to take the older child to school and the younger child to the babysitter's residence. Father is also willing to pay for the older child to attend an after-school program which would allow Father's girlfriend to pick up the child from school. Mother testified to concerns with Father's child-care plan, as she does not believe it would allow for the younger child to be picked up from the babysitter's residence on time. Also, Mother testified that the older child would like Mother to take her to school. Mother also would like the morning bonding time with [the] [C]hildren if Father is not the one directly caring for the [C]hildren.

Mother's child-care arrangements are with a babysitter throughout the day. If Mother needs child-care outside the babysitter's hours, maternal great-grandmother is the usual caretaker.

**13. The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.**

The testimony indicated a fair amount of conflict between the parties and their families. Mother and paternal grandmother have not had a great relationship for at least the last several years. The parties are also distrustful of each other. Father testified that he does not believe what Mother tells him. Mother testified that Father does not provide structure for the [C]hildren and the [*sic*] she believes Father has a drinking problem.

**14. The history of drug or alcohol abuse of a party or member of a party's household.**

Mother believes Father has a problem with alcohol and testified that Father has smoked marijuana. On one occasion, the older child was with Father and wished to return to Mother's

residence. Mother testified that she received a text message from Father asking that Mother pick up the child because Father had consumed too much alcohol to drive. Father testified that, during the marriage, Mother drank frequently and smoked marijuana with the [C]hildren in the residence, although Mother offered rebuttal testimony wherein she denied these allegations. Both parents deny abusing alcohol.

**15. The mental and physical condition of a party or member of a party's household.**

Father testified that he does not have any medical conditions. Mother did not testify to any current medical condition.

**16. Any other relevant factor.**

There are no other relevant factors for determining custody.

Based on the foregoing, the [trial court] determines it is in the [Children's] best interest to remain in Mother's primary custody and to have periods of partial physical custody with Father as outlined below.

Trial Court Opinion, 5/7/19, at 2-6.

On June 6, 2019, Father filed a Notice of Appeal, along with a Concise Statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Father presents the following claims for our review:

A. Whether the trial court committed an abuse of discretion and erred as a matter of law, by using Father's work schedule as the determining factor to not award Father shared physical custody of the minor [C]hildren when Father provided competent evidence of suitable childcare and transportation arrangements[?]

B. Whether the trial court committed an abuse of discretion and erred as a matter or [*sic*] law, by weighing all sixteen (16) factors pursuant to 23 Pa.C.S.[A.] § 5328(a) equally between the parties, with the exception of factor [(a)](9), which was weighed slightly

in Mother's favor on the basis of Father's work schedule and despite competent evidence being provided of suitable child care and transportation arrangements[?]

Father's Brief at 4.

In custody cases under the Act, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted). We are cognizant that

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

With any custody case decided under the Act, the paramount concern is the best interests of the child. *See* 23 Pa.C.S.A. §§ 5328, 5338.

Section 5323 of the Act provides for the following types of awards:

- 7 -

**(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S.A. § 5323.

Section 5338(a) of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) sets forth the best-interest factors that the trial court must consider:[1]

### § 5328. Factors to consider when awarding custody

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

**(1)** Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

---

[1] **See E.D. v. M.P.**, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011) (recognizing that the trial court is required to consider the section 5328 factors).

**(2)** The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

**(2.1)** The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

**(3)** The parental duties performed by each party on behalf of the child.

**(4)** The need for stability and continuity in the child's education, family life and community life.

**(5)** The availability of extended family.

**(6)** The child's sibling relationships.

**(7)** The well-reasoned preference of the child, based on the child's maturity and judgment.

**(8)** The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

**(9)** Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

**(10**) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

**(11)** The proximity of the residences of the parties.

**(12)** Each party's availability to care for the child or ability to make appropriate child-care arrangements.

**(13)** The level of conflict between the parties and the willingness and ability of the parties to cooperate with one

another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

**(14)** The history of drug or alcohol abuse of a party or member of a party's household.

**(15)** The mental and physical condition of a party or member of a party's household.

**(16)** Any other relevant factor.

23 Pa.C.S.A. § 5328(a). Trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) … when entering a custody order." ***J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

In addition,

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.,*** 65 A.3d 946, 955 (Pa. Super. 2013) ….

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.,*** 63 A.3d 331, 336 (Pa. Super. 2013), ***appeal denied***, 68 A.3d 909 ([Pa.] 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V. v. S.T.***, 87 A.3d 818, 822-23 (Pa. Super. 2014).

We will address Father's issues together, as they are interrelated and Father addresses them together in his brief. Father first claims that the trial court improperly awarded primary physical custody to Mother, "based solely

upon the consideration that Father works outside the home[,] when father is capable of providing appropriate childcare and transportation arrangements." Father's Brief at 9. Father points out that the trial court "predominantly considered" the factors set forth at 23 Pa.C.S.A. § 5328(a) to be "largely equal" between the parties. Father's Brief at 9. According to Father, the trial court awarded Mother primary physical custody after finding that Father could not transport the Children to school/preschool in the morning because of his work schedule. *Id.* Father contends that this consideration, standing alone, punishes him for working outside of the home, and does not warrant granting Mother primary physical custody. *Id.* at 9, 10.

Father argues that "[t]here is no evidence of record to establish that there is a negative impact upon [Children] because Father works outside [of] the home[,] or that [Children] are negatively impacted due to Father's absences while at work." *Id.* at 11. Moreover, Father challenges the trial court's finding that Mother is in a better position to provide the Children with more stability during the school year, because Mother is in a position to personally transport the Children to school and/or the babysitter, as an abuse of discretion. *Id.* at 18-19. Father complains that, because he has to rely on a different form of transportation, *i.e.*, his girlfriend, for the Children to get to school and/or the babysitter, the trial court punished him because his work schedule takes him outside of his home early in the morning. *Id.* at 19.

Father also contends that both parents should have the ability to spend time with the Children and bond with them, and the fact that Mother may bond with the Children during the morning ride to school is not more important than his ability to bond with them by having equally shared physical custody. *Id.* at 18. Father asserts that both parents' ability to spend time with the Children and bond with them should be weighed equally. *Id.*

Father disputes Mother's concerns regarding Father's ability to ensure that J.T. will be timely picked up from the babysitter as speculative, at best, and do not warrant the denial of periods of physical custody to Father. *Id.* Additionally, Father directs our attention to his testimony that he timely picks up J.T. *Id.* (citing Reproduced Record ("R.R.") at 81-82; N.T., 4/24/19, at 77).[2]

Father relies upon this Court's decisions in *Witmayer v. Witmayer*, 467 A.2d 371 (Pa. Super. 1983), and *Johnson v. Lewis*, 870 A.2d 368 (Pa. Super. 2005), to support his claims. In *Witmayer*, which preceded the Act, the appellant father alleged that an award of primary physical custody to him would serve the best interests of the parties' son, because the father was at home on a full-time basis. *Witmayer*, 467 A.2d at 375. The father argued that, unlike the mother, who worked and placed the child in daycare, he could

---

[2] The Children's babysitter, C.B., testified on cross-examination by Father's counsel that Father occasionally has picked up J.T. late, which, up to the time of the hearing had not been problematic, but could possibly be problematic in the future, if, for example, C.B. had a medical appointment.

devote almost all of his time to their son. ***Id.*** The ***Witmayer*** panel rejected his argument, stating, "[t]he fact that a parent must work is certainly not a factor that may be used to deprive the parent of custody where adequate arrangements have been made for the child's care in the parent's absence." ***Witmayer***, 467 A.2d at 375 (citation omitted).

In ***Johnson***, the mother argued that the trial court erred by awarding equally shared physical custody to the parties, because the father might have to work the night shift in the future. ***Johnson***, 870 A.2d at 374. The panel stated that, "where, as here, other factors favor awarding custody to a parent, his "work schedule may not deprive that parent of custody if suitable arrangements are made for the child's care in his … absence." ***Id.*** (quoting ***Gerber v. Gerber***, 487 A.2d 413, 416 (Pa. Super. 1985)). Relatedly, the panel also considered whether the trial court erred by allowing any third party, even a competent nanny, to care for the child, when the father is working overnight, where the mother, a fit parent, would be available to watch the child. ***Id.*** at 374-75. The panel held that maintaining the stable consistency of a weekly shift in physical custody, even if the father would alter his work schedule, was reasonably in the child's best interest. ***Id.*** at 375.

***Witmayer*** and ***Johnson*** are distinguishable from the instant situation. As set forth above, in ***Witmayer***, the father stayed at home full-time, and the mother went to work outside of her home. Here, both parents work outside of the home. In ***Johnson***, the panel observed that maintaining the stable

- 13 -

consistency of a weekly shift in physical custody was in the child's best interest. In its Opinion, as set forth below, the trial court evaluated the evidence, weighed the statutory factors, and explained why a different result was required in this case:

Father's first argument on appeal is that this [c]ourt abused its discretion with regard to using Father's work schedule as the determining factor in not awarding Father shared physical custody, and Father's second argument is that the [c]ourt abused its discretion with regard to weighing all sixteen factors pursuant to 23 Pa.C.S.A. §[ ]5328(a) equally between Father and [Mother] except for factor (a)(9)[,] which was weighed in favor of the Mother based on [Father's] work schedule. Father argues that he provided evidence of suitable child care [*sic*] and transportation arrangements to negate these issues with his work schedule.

[The trial court] believes that it did not abuse its discretion with regard to Father's first issue. Shared physical custody is defined as "[t]he right of more than one individual to assume physical custody of the child[ren], each having significant periods of physical custodial time with the child[ren]." 23 Pa.C.S.A. §[ ]5322(a). ["]Shared physical custody does not necessarily mean equal time.["] **See T.B. and S.E. v. S.H. and K.W.**, [136 A.3d 1027 (Pa. Super. 2016) (unpublished memorandum) (quoting, **V.B. v. M.L.T.B.**, 467 A.2d 880, 883 (Pa. Super. 1983))]. Primary physical custody is defined as "[t]he right to assume physical custody of the child for the majority of time." 23 Pa.C.S.A. § 5322(a). Awarding primary physical custody to a party does not foreclose the possibility of shared physical custody also being awarded to another party. **See T.B. and S.E.**[]

In this case, although Mother did receive what [the trial court] termed "primary physical custody" in its Order of Court/Parenting Plan, both Father and Mother do have shared physical custody, as they both have "significant periods of physical custodial time." For the summer schedule, each parent has seven (7) overnights during the two[-]week repeating schedule, approximating an equalization of the time available to each parent when the parents are not working. For the school year schedule, both [Father] and [Mother] each have one of the two weekends during the two[-]week repeating schedule, from Thursday through

Sunday, with Father's weekend interrupted only by Mother transporting the [C]hildren to school and daycare on Friday morning. In awarding this transportation time to Mother, who was otherwise traveling in the same general direction as the two destinations for her own work purposes, the [trial court] attempted to promote frequent contact with Mother, with whom [the trial court] concluded the [C]hildren had a close and loving relationship. Similarly, [the trial court] concluded that the [C]hildren have a close and loving relationship with [Father], and[,] therefore[,] awarded Father the Thursday evening at what is otherwise the commencement of Mother's weekend, so as to promote Father's frequent contact with the [C]hildren. Regarding the weekdays, the analysis of which overlaps with the forgoing, Father receives time in the evenings on five of the ten weekdays - Monday, Thursday and Friday evenings of week one (with Thursday and Friday being part of his weekend time), and Monday and Thursday evenings of week two. [The trial court] acknowledges that Mother does receive more morning time in the school year schedule. The [trial court] determined that it was in the best interest of the [C]hildren to be in the overnight physical custody of Mother during the school year because Father's early start to his work day [*sic*] does not allow him to take [the C]hildren to school/daycare, both of which are a significant distance from Father and Mother's respective residences. [The trial court] felt that it was best for the [C]hildren to be transported to school and daycare by as [*sic*] parent, as discussed in more detail, *infra*, and[,] therefore[,] awarded Mother more overnights during the school year so as to minimize the disruption to the [C]hildren of being picked up by Mother at Father's residence more often than provided for in the Order of Court/Parenting Plan.

Given the forgoing, because "significant periods of physical custodial time" does not mean "equal" periods of physical custodial time, and because Father does have significant periods of physical custodial time with his children, Father does have shared physical custody. Therefore, [the trial court] believes that it did not abuse its discretion, and Father's first issue is without merit.

Father's second issue focuses in on 23 Pa.C.S.A. § 5328, which enumerates sixteen (16) factors that [the trial court] must consider when awarding custody. Father contends that [the trial court] weighed all equally, except for 23 Pa.C.S.A. § 5328(a)(9), which [the trial court] found weighed in Mother's favor. 23

- 15 -

Pa.C.S.A. § 5328(a)(9) requires [the trial court] to consider "[w]hich party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's needs." While [the trial court] is confident that both parties are able to maintain a loving and nurturing relationship with the [C]hildren, [the trial court] finds that Mother is better able, with her schedule, to provide stable and consistent transportation for the [C]hildren to get to school. Although Father has stated that his girlfriend can take the [C]hildren to school in the mornings and assist with picking them up in the evening, and Father's mother, the [C]hildren's paternal grandmother, could be of assistance as a backup plan, [the trial court] found Mother to be the more stable option. Furthermore, [the trial court] believes that it is in the [C]hildren's best interest to spend time with a parent[,] rather than a third party[,] when one parent is available and the other is not, particularly when the proposed third party with whom the [C]hildren will be spending significant time is not related to the [C]hildren.

Father's girlfriend, [J.S.], testified that she had only been dating Father for approximately five (5) months when [the trial court] heard her testimony, and the two had only lived together for approximately three (3) months at that time. [J.S.] has never before picked the [C]hildren up from school/daycare, and she does not know Mother. Finally, [J.S.'s] testimony on direct examination centered almost solely on the logistics of transporting the [C]hildren, and Father elicited no testimony from her about the nature and quality of her relationship with the [Children].

Father also offered his mother, [L.M.], as a backup transportation option. [L.M.] currently works as a self-employed driver of an escort vehicle for oversize loads. [L.M.] testified that she has job flexibility to provide transportation on an as-needed basis. She also testified that she would be beginning work as the general manager of a truck stop when it opens in the late fall of 2019, and expects to have similar job flexibility. [L.M.] testified that she lives 20 miles from Father's residence[,] where she would be required to pick the [C]hildren up and drop them off, if called upon to provide transportation. Additionally, [L.M.] gave no indication of the location of the truck stop relative to Father's residence. In her present job, [L.M.] indicated that she only receives 48 hours' notice of when she is needed to escort an oversize load. When asked on cross examination about the frequency of her work escorting oversize loads, to include the

number of escort cars her business needs to typically provide for a load, [the trial court] found [L.M.] to be evasive in answering the questions, particularly when she has been involved in the business for nineteen (19) years. [L.M.'s] evasiveness, combined with the future uncertainty of her availability in her next job as the manager of the truck stop, provides additional support to [the trial court's] conclusion that Mother's availability to provide transportation to be a more stable and reliable arrangement for the [C]hildren, and to clearly be in their best interest.

In addition to all of the foregoing, Mother presented some concerns with regard to whether the [C]hildren will be able to be picked up on time in the afternoon by [J.S.], and the oldest child stated (as the parties had stipulated to the admissibility of hearsay statements) a preference for Mother to take them to school. Because of all of the above, and because Mother is willing and able to provide the [C]hildren with transportation to school, [the trial court] has concluded that Mother is the more stable and preferable transportation option for the each weekday.

## **CONCLUSION**

In summary, [the trial court] sought to promote frequent contact between the [C]hildren and each parent and to maximize the time that the [C]hildren could spend with a parent when a parent is available to the [C]hildren, as opposed to third parties, and[,] in particular, unrelated third parties with whom it did not appear to [the trial court] that the [C]hildren had developed a significant relationship over a substantial duration of time. Father's first matter complained of, that [the trial court] abused its discretion with regard to using Father's work schedule as the determining factor in not awarding Father shared physical custody, is without merit, as [the trial court] awarded Father shared physical custody. Furthermore, [the trial court] believes that it did not abuse its discretion in fashioning the custody schedule as ordered. Mother is willing and able to transport the [C]hildren on weekdays, whereas Father is unable to do so, without significant, ongoing assistance from third parties.

Trial Court Opinion, 7/17/19, at 1-6.[3]

We find competent evidence of record to support the findings of the trial court. *C.R.F. v. S.E.F.*, 45 A.3d at 443. As we are bound by the trial court's credibility and weight assessments regarding the evidence, and the trial court's conclusions are not unreasonable, we will not disturb the trial court's decision not to award equally shared physical custody to the parties, and to award primary physical custody to Mother. *See id.*; *see also M.J.M. v. M.L.G.*, 63 A.2d 331, 339 (Pa. Super. 2013) (recognizing that "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." (citation omitted)). Accordingly, we affirm the trial court Custody Order.

Order affirmed.

---

[3] In accordance with this Court's Internal Operating Procedures § 65.37, effective April 16, 2019, a non-precedential decision of this Court filed after May 1, 2019 may be cited for its persuasive value, pursuant to Pa.R.A.P 126(b). As the decision in *T.B.* was non-precedential and filed on January 6, 2016, the trial court could not cite the decision in *T.B.* for its persuasive value. However, the trial court also relied upon published case law, *V.B.*, cited therein.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/21/2020