620 A.2d 1161

**Lori J. MILLER (Since Remarried—Now Lori J. Detweiler), Appellant,**

v.

**Raymond E. MILLER.**

Superior Court of Pennsylvania.

Argued June 24, 1992.

Filed Feb. 19, 1993.

William A. Gross, Doylestown, for appellant.

Jeffrey M. Williams, New Hope, for appellee.

Before JOHNSON, FORD ELLIOTT and HOFFMAN, JJ.

FORD ELLIOTT, Judge:

This appeal is from the trial court's entry of a marriage settlement agreement as an order of court and the striking of a provision in the agreement which called for binding arbitration in custody disputes.

The parties were married on October 4, 1980. Two children were born of the marriage: Janell Miller, born June 30, 1983, and Justin Miller, born February 3, 1989. In May 1989 the parties separated but agreed Father should retain custody of the children. This agreement was reduced to writing on July 6, 1989. On April 4, 1990, the parties were divorced. At the time of the divorce, the parties entered into a Marriage Settlement Agreement which addressed property rights, support, custody, and other intra-family matters. This Marriage Settlement Agreement incorporated a Mediation/Arbitration Agreement signed by the parties. The Mediation/Arbitration Agreement provided that if a dispute, claim, or controversy is not resolved following mediation, resulting in a written agreement between the parties that they agree shall be final and

binding upon them and which may be entered as a judgment by any court having competent jurisdiction, then a Board of Arbitrators shall arbitrate and decide all issues and render a written decision. This decision may be entered as a judgment by any court having competent jurisdiction. Father subsequently filed for child support. Mother responded by exercising the options provided by the Mediation/Arbitration agreement and submitted the custody matter to mediation. A mediation session was held in August of 1991 which failed to resolve the issue. The matter was then submitted to arbitration. A panel of three arbitrators decided the custody issue in favor of Mother. Father refused to relinquish custody.

Mother then sought to have the arbitrators' decision enforced as a court order and filed a Petition to Enter the Marital Settlement Agreement as an order of court. On November 18, 1991, a hearing was held before the Honorable Susan Devlin Scott who entered the parties agreement which incorporated by reference the mediation/arbitration agreement as an order but struck the provisions of the two agreements calling for binding arbitration on the issue of custody and refused to enter the arbitrators' award of custody. Mother appeals from that order.

On appeal, Mother argues the trial court erred in determining, as a matter of law, that the inclusion of a negotiated child custody non-judicial arbitration proceeding as a part of a marital settlement agreement is void as against public policy.[1]

Citing the general principle of law favoring private non-judicial mediation and arbitration of disputes, Mother argues

1. Mother presents two issues:
   a. Whether the trial court erred in refusing to enter an Order confirming the August 15, 1991 award of the arbitration board which had been convened at the parties' request; and in finding that, as a matter of public policy, the calling for binding arbitration on the issue of custody/visitation was void.
   b. Whether the trial court erred in entering as an Order the parties' marital settlement agreement, excluding the portion thereof pertaining to determination of child custody.
   However, in effect, both issues present the same question: the validity and enforceability of binding arbitration provisions in child custody disputes.

that the Uniform Arbitration Act, Act of October 5, 1980, 42 Pa.C.S.A. § 7303[2] provides for the enforceability of a written agreement to submit a controversy to arbitration. Furthermore, a party who has submitted to a common law arbitration award, pursuant to the Uniform Arbitration Act, is bound thereby unless he can show that he was denied a hearing or that fraud, misconduct, corruption, or other irregularity caused an unjust, inequitable, or unconscionable award to be rendered. 42 Pa.C.S.A. § 7341.[3] Thus, Mother contends since Father cannot claim he was denied a hearing or that fraud, misconduct, or corruption caused an unfair award, the arbitrators' award of custody must stand.

While we agree generally with Mother's statement of the law that parties are bound by an arbitration decision unless an arbitrators' award was gotten by fraud or a party was denied a hearing, our review of relevant case law does not support a determination that courts will be bound by such decisions in custody cases nor that a court's review will be limited necessarily by the arbitration provisions.

Mother and Father both refer to this court's decision in *Walker v. Walker*, 308 Pa.Super. 280, 454 A.2d 130 (1982), for different propositions. In *Walker*, Husband and Wife execut-

2. 42 Pa.C.S.A. § 7303 provides:
   **§ 7303. Validity of agreement to arbitrate**
   A written agreement to subject any existing controversy to arbitration or a provision in a written agreement to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity relating to the validity, enforceability or revocation of any contract.
   1980, Oct. 5, P.L. 693, No. 142, § 501(a), effective in 60 days.

3. 42 Pa.C.S.A. § 7341 provides:
   **§ 7341. Common law arbitration**
   The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.
   1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978. As amended 1980, Oct. 5, P.L. 693, no. 142 § 501(a), effective in 60 days.

ed a separation agreement which provided that both parties were to have joint custody of their two minor children, each parent having equal time with each child, and that Husband was to pay Wife $240 per month for the care, support, and maintenance of their children. The separation agreement also included a provision for the arbitration of any dispute relating to the custody and support provision. Problems developed when the children began to spend more than one-half of their time with their father. Husband paid Wife one-half of the $240 amount, for the month of December 1978, based on the average number of days the children had spent with her. Wife objected and the dispute, as per the separation agreement, was submitted to an arbitrator.

The following month, January 1979, the arbitrator rendered his decision in which he determined Husband should affirmatively encourage the children to spend an equal amount of time with both parents, and Husband should continue to make support payments in the amount of $240. Mother then filed a Petition to Confirm and Enforce the Arbitration Award, and a hearing was held in the Court of Common Pleas of Montgomery County on May 31, 1979. Prior to the hearing Husband filed Preliminary Objections challenging the jurisdiction of the court.

On July 3, 1979, the trial court dismissed Husband's preliminary objections and confirmed the arbitrator's award and ordered the parties to formulate a schedule for custody per their separation agreement. Husband filed exceptions to the July 3rd order. What followed in *Walker* was a second trial court order being entered giving custody of the children to Husband which was in direct conflict with the July 3rd order awarding shared custody. On appeal, we were compelled to remand the matter.

Instantly, Mother argues based on *Walker* that the trial court erred in flatly rejecting the arbitrator's decision. On the other hand, Father urges us to adhere to the language of the *Walker* court when it stated:

The court was, of course, not bound by the parties' agreement with respect to custody. Contracts as to the custody

of minor children are always subject to being set aside in the best interests of the child. *Commonwealth ex rel. Children's Society v. Gard,* 362 Pa. 85, 66 A.2d 300 (1949); *Commonwealth ex rel. Veihdeffer v. Veihdeffer,* 235 Pa.Superior Ct. 447, 344 A.2d 613 (1975).

We remanded in *Walker* for the filing of a comprehensive trial court opinion. While we consider *Walker* to be instructive, we find that it did not resolve the issue of the enforceability of binding arbitration in a custody matter. What is instructive about *Walker* is that the court did not strike down the arbitration provision as being void as against public policy. Moreover, there did not appear to be any real issue presented in the *Walker* case that the arbitrator's award was not in the best interest of the child on the custody matter.

Instantly, we agree with Mother that arbitration generally is a favored remedy as it permits parties to agree to resolve disputes outside the court system. *See Children's Hospital of Philadelphia v. American Arbitration Association,* 231 Pa.Super. 230, 331 A.2d 848 (1974); *Mendelson v. Shrager,* 432 Pa. 383, 248 A.2d 234 (1968). Courts benefit from reduced congestion and parties benefit by having their disputes resolved in a private forum by self-chosen judges. We acknowledge arbitration has been used more frequently in other jurisdictions as a viable means of resolving domestic disputes that arise under separation agreements. *See* Comment, "The Enforceability of Arbitration Clauses in North Carolina Separation Agreements," 15 Wake Forest L.Rev. 487 (1979). We agree that parties should be able to settle their domestic disputes out of court, and if the parties choose to arbitrate their domestic differences they should be permitted to do so. We concur in Mother's contention that parties who have agreed to arbitrate should be bound by that decision and that arbitration provisions regarding custody are not, as determined by the trial court, void as against public policy. However, and most importantly, we do not agree that in the matter of child custody an arbitration award shall be binding on a court if such award is challenged by one of the parties as not being in the best interests of the child. As such, we decline to

hold that the trial court is bound by the narrow scope of review set out in the Uniform Arbitration Act. An arbitration award on the issue of custody is subject to review by a court of competent jurisdiction based upon its responsibility to look to the best interests of the child.

In *Witmayer v. Witmayer,* 320 Pa.Super. 372, 467 A.2d 371 (1983), this court opined on the effect and importance of private custody agreements:

If informal custody agreements have no force and effect, then parents can engage in self-help, breach an agreement at will, and suffer no detriment. This would discourage orderly private settlements of disputes and potentially expose a child to greater instability, disruption and discord.

The law looks with favor upon resolutions of custody disputes that are settled privately. *Warman v. Warman,* 294 Pa.Super. 285, 439 A.2d 1203 (1982). It is desirable for divorcing parents to settle their differences without the intervention of the court system wherever possible. There are good reasons why these private agreements serve the best interests of the child:

First, most parents genuinely love their children, and it is reasonable to assume that the children's welfare is a vital consideration in the parents' decision to resolve their dispute by agreement. One major reason that parents agree on custody is to spare their children the trauma inherent in an adversarial hearing. Second, parents have a better informational base upon which to make a decision about custody. The adversarial process is an inadequate means to assemble sufficient 'facts' to resolve custodial disputes satisfactorily. Third, it is difficult to protect a child from the painful pull of divided loyalties when his parents fail to agree. Parental agreements help to preserve an atmosphere of at least superficial peace between parents and thereby facilitate a much easier and more meaningful future relationship between the child and the non-custodial parent. An unusually sensitive statement of these factors was offered by an Illinois court:

[T]he virtues of parental agreement are strong, and the law appreciates them.... The parents obviously know more about the family than a judge is likely to learn in a short, formal hearing. In a more or less amicable dissolution, the parents' natural desire to do what is best for their children gives any agreement about custody great weight as an indicator of what is in the best interest of the children. Moreover, amicable settlement of custody arrangements is a good thing in itself, for peace between the parents must benefit the children; and a court will hesitate to tamper with what may be a fragile agreement, worked out only with difficulty.

Sharp, *Modification of Agreement—Based Custody Decrees: Unitary or Dual Standard?*, 68 Va.L.Rev. 1263, 1280 (1982) (footnotes omitted).

Divorced or separated parents usually differ on questions relating to their children. For those parents to work out a mechanism themselves whereby they resolve those conflicts privately is to be encouraged. Such a mechanism, once forged, may set a pattern for resolution of later disputes as they arise. Such resolutions frequently result in informal agreements. This is not to deny that many divorced or separated parents will not be able to settle their differences without the intervention of the court system. The law should not impede, however, those parents who are able to forge a mechanism for private dispute resolution.

*Id.* at 379–380, 467 A.2d at 374–375. Other jurisdictions have also looked favorably upon private mediation and arbitration agreements to initially resolve custody disputes. *Flaherty v. Flaherty,* 97 N.J. 99, 477 A.2d 1257 (N.J.1984); *Sheets v. Sheets,* 22 A.D.2d 176, 254 N.Y.S.2d 320 (1964). *Cf. Nestel v. Nestel,* 38 A.D.2d 942, 331 N.Y.S.2d 241 (1972).

█ While we encourage parties to resolve their disputes amicably and without court intervention, if possible, we cannot ignore our duty to protect the rights and interests of children once called upon to do so. Therefore, while arbitration proceedings in custody disputes are not void as against public policy, the question of the enforceability of arbitration awards in this context is a very different matter. Thus while agree-

ments entered into between parties are binding as between the parties, they may not bind the court once its jurisdiction is invoked.[4] It follows necessarily that an award rendered by an arbitration panel would be subject to the supervisory power of the court in its *parens patriae* capacity in a proceeding to determine the best interests of the child. It has long been recognized by the courts that it is the Commonwealth who is charged with the duty of protecting the rights and interests of children. *In Re: William L.*, 477 Pa. 322, 383 A.2d 1228 (1978).

Our case law is clear with respect to the authority of courts in consideration of child custody issues. In *Mumma v. Mumma*, 380 Pa.Super. 18, 550 A.2d 1341 (1988), *appeal denied*, 524 Pa. 629, 574 A.2d 70 (1989), the trial court declined to follow a shared custody arrangement which had been agreed to by the parties. This court held: "The trial court was not bound by the parties' agreement with respect to Bo's [their son] custody. A contract pertaining to the custody of a minor child is always subject to being set aside in the best interest of the child." *Id.* 380 A.2d at 22, 550 A.2d at 1343. "No parental

4. The distinction is addressed by the New York, Supreme Court Appellate Division in *Sheets, supra.*

> Thus, the best interest of the child is assured protection by this omnipresent judicial check against arbitration awards in custody matters attaining the unassailable finality of awards in other arbitrations. Nor could any such award in a custody matter be given any *res judicata* consequences against the child, who was not a party to the arbitration. However, such an award would effectively bind the parents of the child to the extent that it settled their disputes, but only insofar as the award did not adversely affect the substantial interest of the child.

> Hence, upon any showing that a provision of an award might be adverse to the best interest of a child, the Court could take such action that was necessary for the best interest of the child. Once the court's paternal jurisdiction is invoked, it would examine into the matter, *de novo*, and in doing so could utilize the proof adduced before the arbitration tribunal, could call for new proof, or could employ a combination of both. The Court could then determine what was necessary for the best interest of the child.

> However, the award could not be effectively attacked by a dissatisfied parent merely because it affected the child. Obviously every such award will have that effect. What must be shown to evoke judicial intervention is that the award adversely affects the welfare and best interest of the child—clearly a much narrower issue.

agreement, of course, can permanently determine the custody of children.... The best interests of the child determine custody, and a court with proper jurisdiction has power to redetermine the best interest where circumstances change. (citations omitted)" *Hattoum v. Hattoum,* 295 Pa.Super. 169, 178, 441 A.2d 403, 407 (1982).

In *Warman v. Warman,* 294 Pa.Super. 285, 304, 439 A.2d 1203, 1213 (1982), this court stated: "A child cannot be a piece of property to be disposed of in a Separation Agreement, *In re Rosenthal v. Rosenthal,* 103 Pa.Super. 27, 157 A. 342 (1931), although the courts do encourage sensible private solutions to custodial problems where possible."

■ We find agreements by parents concerning their children, while encouraged, will always be subject to close scrutiny by a court and are subject to being set aside as courts will not be bound by such agreements. Our supreme court recently addressed the issue of agreements between parents in the context of child support payments. The court stated:

> Parties to a divorce action may bargain between themselves and structure their agreement as best serves their interests, *Brown v. Hall,* 495 Pa. 635, 435 A.2d 859 (1981). They have no power, however, to bargain away the rights of their children, *Sonder v. Sonder,* [378 Pa.Super. 474, 549 A.2d 155] *supra* [1988] Their right to bargain for themselves is their own business. They cannot in that process set a standard that will leave their children short. Their bargain may be eminently fair, give all that the children might require and be enforceable because it is fair. When it gives less than required or less than can be given to provide for the best interest of the children, it falls under the jurisdiction of the court's wide and necessary powers to provide for that best interest. Id. It is at best advisory to the court and swings on the tides of the necessity that the children be provided. To which the *inter se* rights of the parties must yield as the occasion requires.

*Knorr v. Knorr,* 527 Pa. 83, 86, 588 A.2d 503, 505 (1991).

We acknowledge the supreme court had before it a provision of a separation agreement concerning child support pay-

ments. However, we consider its determinations of the court's role in enforcing such agreements equally applicable to custody matters. Hence, we find the trial court was not bound to confirm the arbitration award that was being challenged by Father. The limited review set out in 42 Pa.C.S.A. § 7341 will not bind the court in custody matters. Rather, the trial court must view the decision of the arbitrators in light of the best interests of the child. However, if the court following its review finds that the arbitrators' award is in the bests interests of the child, the court may adopt the decision as its own.

Accordingly, though we find that the trial court erred in striking the arbitration provisions as being void as against public policy,[5] we agree with the trial court generally on the enforceability of such provisions. We further agree that the trial court was not required to confirm the arbitration award under the constraints of the Uniform Arbitration Act. Thus, the order striking the binding arbitration provision from the Marital Settlement Agreement is vacated. Case remanded for a determination as to whether the decision of the arbitrators is unenforceable as being adverse to the best interests of the children in this action.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting.

The intentions of the trial court, announced from the bench during the hearing on November 18, 1991, were never reduced to a formal order of court. The certified record confirms that a hearing on custody was scheduled for December 9, 1991, before the same judge who held the hearing on the Petition to Enter Agreement as Order of Court. The refusal of the trial judge to adopt a provision requiring binding arbitration on the issue of custody does not constitute an abuse of discretion. For all three of these reasons, I must respectfully dissent.

5. We note that the trial court in its opinion stated that it viewed mediation as valuable in that it fosters parental agreement and may even serve to reduce animosity between the parties. It was only the arbitration provision that was struck by the trial court.

Lori J. Miller, "Mother", has brought this appeal relying solely on statements made by the distinguished trial judge, the Honorable Susan Devlin Scott, during a hearing on a petition to enter a marital settlement agreement, and related documents, as an order of court. Mother asks us to accept the following declarations by Judge Scott as the "order" we are to review on this appeal:

## II.  ORDER IN QUESTION

" . . . the marital settlement agreement, which is P–1 for this record, I will enter as the order of court now.

Section 4 of the marital separation agreement refers to a mediation/arbitration contract, which is P–2 in this record. The provision of P–2 which calls for binding arbitration on the issue of custody/visitation I find is void against public policy, and anything contrary in P–1 is also to be striken [sic] on the issue of custody."

TRANSCRIPT OF 11/18/91 HEARING, INCLUDING THE ABOVE–MENTIONED ORDER IS INCLUDED IN THE REPRODUCED RECORD (R 51a).

Brief of Appellant, filed March 16, 1992, p. 2. The intentions of Judge Scott were never reduced to a formal order for her review and approval. A formal order has not been entered on the docket. The docket entries certified to this court contain the following entry:

111891 ORDER ENTERED.  DENIED

HEARING HELD AND ORDER ENTERED.  SEE FILE.

SCOTT/J VOICE/CR

A Civil Court Sheet contained within the certified record includes the following, unsigned handwritten entries:

PI [P–1?] marital separation agreement entered as order of court excluding anything on custody.  P2—Binding arbitration on custody—void against public policy.  No counsel fees to be awarded today.  P3—Custody agreement will not be enforced by court.  P4—Not to be enforced by court.  Pre-

liminary objections on custody rescheduled to 12/9/91 10 AM. Only matter before court on custody.

An examination of the entire fifteen page transcript of November 18, 1991, leads this writer to conclude that many things remained to be formalized following the conclusion of the hearing, including a hearing on a separate custody proceeding involving the same parties scheduled for less than a month later. Transcript of Proceedings (N.T.), November 18, 1991, p. 14, R.R. 56a. If we restrict our review to the language of the trial court selected by Mother as the "order" supporting her appeal, we are still faced with indefiniteness.

Although Judge Scott states that she "will enter" the marital settlement agreement "as the order of court now" N.T. p. 9, R.R. 51a, the surrounding colloquy makes clear that portions of both the marital settlement agreement and the mediation/arbitration contract are *not* to be considered part of the order of court. Not only does Judge Scott find the binding arbitration provisions of the mediation/arbitration contract void as against public policy—and therefore not includible in her order—N.T. p. 9, R.R. 51a; the court goes on to declare that "anything contrary [to public policy] in the marital settlement agreement is also *to be stricken* on the issue of custody." *Id.*

The Petition to Enter Agreement as Order of Court filed September, 16, 1991 prays that the court "enter the parties Agreements as an Order of Court, thereby providing the Court with full jurisdiction to enforce the Agreements as an Order ..." Petition, p. 4 (emphasis added). The hearing transcript establishes that Judge Scott rejected the prayer with respect to both P–3, the Custody Agreement, and P–4, the Minutes—Detweiler/Miller. Judge Scott expressly stated:

THE COURT: ....And to complete the record, P–3, which is the custody agreement, I will not enforce for the reasons I've stated....

. . . . .

. . . . .

THE COURT: P–4 I certainly will not enforce, which is what you asked me to enforce under common law arbitration. And to be consistent, P–3 I am not going to enforce....

N.T., *supra* at p. 12, R.R. 54a.

I have found nothing in the record certified to this Court which establishes those portions of P–1 and P–2 which Judge Scott did, in fact, incorporate as an order of court. I find nothing clearly confirming that Judge Scott rejected both P–3 and P–4 as part of any order. Mother does not direct us to any place in the record where the trial court did, finally, enter any documents, or parts of documents, as an order of the court. There is an unsigned, proposed Order of Court attached to the front of the Petition which would have been intended, if and when signed, to accomplish the prayer of Mother in her Petition.

Absent a signed, executed order of court which reduces to a single writing the actions of the hearing court, I would be inclined to reject the appeal as having been taken prior to the entry of an appealable order.

Moreover, Judge Scott, at the same time she declined to adopt binding arbitration on November 18, 1991, set a hearing on the preliminary objections filed to the petition for custody in a related action. That hearing was scheduled for December 9, 1991 at 10:00 a.m. Neither Mother nor Father on this appeal have informed this court of the status of that custody proceeding. Nevertheless, because of the outstanding custody matter, I would be reluctant to give much weight to Mother's averment in her Petition that:

15. Without the Agreements being entered as an Order of the Court, your Petitioner is without ability to seek relief and restitution for any violation of the Agreements.

Certainly, with regard to the custody of Justin Miller and Janell Miller, the courts of this Commonwealth are always open to consider that question in the context of the best interests of the children, without regard to the existence of any written agreement between the parents.

Finally, I am unable to join with my esteemed colleagues because I discern no error committed by Judge Scott. If it is assumed that Judge Scott's statements from the bench constitute a reviewable order, all she did was to refuse to incorporate a provision for binding arbitration on the issue of custody into the order which she was prepared to enter. My colleagues do not inform me how this could possibly be either an abuse of discretion or error.

Raymond E. Miller, "Father", filed an Answer to the Petition to Enter Agreement as Order of Court. There was no testimony taken at the November 18, 1991 hearing on the Petition and Answer. Under these circumstances, we are required to determine only the relevant issues raised by the petition and answer, accepting as true the pertinent facts set forth in the answer and rejecting those which are alleged in the petition but denied in the answer. *University City Savings and Loan Association v. Girard Life Insurance Company of America*, 215 Pa.Super. 57, 62, 257 A.2d 92, 95 (1969).

The Mediation/Arbitration Contract, P–2, which Mother petitioned to be entered as an order of the court, contained the following terms and conditions:

... [S]hould a reconciliation not be possible, then the CCS [Christian Conciliation Service] will appoint a group of arbitrators/mediators ... who will mediate and, if necessary, arbitrate the outstanding issues relating to applicable actions: equitable distribution, alimony, alimony pendente lite, support and/or maintenance (child and spousal), *custody/visitation,* counsel fees, costs and expenses.

... [I]f the domestic dispute ... cannot be resolved and settled ..., then the parties shall submit to the authority of the Board and the dispute ... shall be submitted to the Board for mediation first, and if not successful, then for arbitration. In the event the dispute ... is not resolved after mediation, ... then *the Board shall arbitrate and decide all issues* in accordance with fair Christian principles ... *and shall render a written decision* (hereinafter referred to as *"Determination"*).

*The parties agree, in advance,* that if the issues cannot be successfully mediated, then *both parties will abide by the Determination of the Board. The Determination of the Board shall be final and binding upon the parties, and judgment upon said Determination may be entered by any court having competent jurisdiction.*

Petition to Enter Agreement as Order of Court, filed September 16, 1991, Exhibit B, Mediation/Arbitration Contract, pp. 1, 2. (Emphasis added).

Where the "Determination" involved child custody and would have been made by a group of arbitrators appointed by the Christian Conciliation Service of Bucks County, the hearing court refused to entered those provisions which called for binding arbitration as part of any order of court. This is fully consistent with existing law and, in no way, could amount to an abuse of discretion. Any contract pertaining to custody of minor children is always subject to being set aside in the best interest of the child. *Mumma v. Mumma,* 380 Pa.Super. 18, 22, 550 A.2d 1341, 1343 (1988), *appeal denied,* 524 Pa. 629, 574 A.2d 70; *Walker v. Walker,* 308 Pa.Super. 280, 283, 454 A.2d 130, 132 (1982).

The issue before this court is, stated simply, did Judge Scott err when she refused to enter an order which would have purportedly taken away from the court the right to consider the best interest of the children in any forthcoming custody dispute? I agree with my colleagues that an arbitration award cannot be binding on a court, in the matter of child custody, if such award is challenged by one of the parties as not being in the best interests of the child. Majority op., p. 1164. I, however, would go further. I view the obligation of the court to consider, and be responsible for, the best interest of the child *at any time the processes and authority of the court are sought to be employed.*

Here, Mother sought the power and authority of the court, when she petitioned to have the court approve binding arbitration to finally settle matters involving custody. The trial court had no alternative but to refuse this request. The majority declares that an arbitration award on the issue of custody is

subject to review by a court of competent jurisdiction based upon its responsibility to look to the best interests of the child. Majority op., p. 167–69. I could not agree more. It is for precisely this reason that Judge Scott refused to incorporate binding arbitration as a part of any order she would be called upon to sign.

That refusal could not constitute abuse. It is entirely consistent with the law of this state. If this appeal is not to be quashed as having been brought prior to the entry of an appealable order, I would affirm the action of the distinguished trial judge. Accordingly, I must respectfully dissent.