J-A23019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AMY HUSS, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| JAMES P. WEAVER, | : | |
| Appellee | : | No. 1703 WDA 2013 |

Appeal from the Order entered September 25, 2013,
Court of Common Pleas of Washington County,
Civil Division at No(s): 2013-1209

BEFORE:  DONOHUE, ALLEN, and MUSMANNO, JJ.

DISSENTING MEMORANDUM BY ALLEN, J.:     **FILED SEPTEMBER 25, 2014**

I respectfully dissent because I would affirm the trial court's order sustaining the preliminary objections of Weaver and dismissing Huss' complaint seeking enforcement of the parties' Agreement.

The following facts are not disputed:  The parties were romantically involved.  Weaver is an attorney, and Huss is a real estate agent.  According to Huss, at the time of the Agreement, Weaver "was a practicing attorney at law with specialized training in the law and knowledge of the law … he and another associate … were working on said agreement."  Complaint, 3/7/13, ¶ 4-5; Amended Complaint, 4/19/13, ¶ 4-5.   Weaver's preliminary objections filed in response to Huss' complaint and amended complaint do not specify who drafted the Agreement.

The Agreement prospectively delineated the parties' custodial and child support rights and obligations "in the event that [Huss] has a child or children of [Weaver's] and the parties' relationship is ended by either party…" Agreement, 10/17/08, at 1. At the time of the Agreement, the parties had no children. Two years later, on November 3, 2010, the parties' only child was born.[1] The parties' relationship ended, and on March 7, 2013, Huss filed her complaint alleging Weaver's breach of the Agreement.

Huss seeks to enforce paragraph 4 of the Agreement, which the Majority references as the "$10,000 clause":

>   4.   Modification of Agreement. This Agreement may only be modified or amended by the parties by a written instrument signed by both [Weaver] and [Huss]. The parties acknowledge that this Agreement may be modified or superceded by a court of competent jurisdiction. In the event that [Weaver] files a complaint, motion, petition or other similar pleading seeking the modification of the custody and/or visitation provision set forth herein, [Weaver] agrees to pay [Huss] $10,000 for each modification or amendment sought.

Agreement, 10/17/08, at 2.

_____

[1] Weaver filed a custody complaint against Huss on December 21, 2010, and at the time the trial court decided Weaver's preliminary objections, the "custody litigation was ongoing." Trial Court Opinion Order, 9/25/13, at 1. *See also* Weaver's Brief at 1 ("Since late 2010, [Huss] and [Weaver] have been embroiled in litigation over numerous matters pertaining to the custody and support of [their child] in the Washington County Court of Common Pleas at No. 2010-10883.").

Huss asserts that the trial court erred in concluding that the Agreement is against public policy because Appellant "is not seeking a reduction, modification or waiver of child support or custody," and is "simply seeking the enforcement of the defense fund of $10,000.00 agreed to in Paragraph 4 of the [A]greement, as drafted by [Weaver]." Huss' Brief at 11-12. Huss avers that her "claims do not involve the right of child support or custody." *Id*. at 4. In agreement with Huss, the Majority concludes that the "issue of whether a provision in a custody/visitation contract that places a serious impediment on either party's ability to seek court modification in the best interests of the child is not presently before this Court." Majority at 11. We disagree.

Appellant's claim regarding the "$10,000 clause" **does** involve the right of custody. As the trial court explained:

> [C]hild custody agreements are always subject to the Court's scrutiny and modification of a custody agreement is always appropriate if it is determined that the child's best interest requires a different custody arrangement. *Mumma v. Mumma*, 550 A.2d 1341, 1343 (Pa. Super. 2008). In the Commonwealth of Pennsylvania, it is "public policy … to assure continuing contact between children and their parents…[.]" *T.B. v. L.R.M.*, 567 Pa. 222, 230, 786 A.2d 913, 918 (2001). Public policy is implicated when "a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy]. *Ferguson v. McKiernan*, 596 Pa. 78, 93, 940 A.2d 1236, 1245 (2007) *citing Mamlin v. Genoe*, 340 Pa. 320, 325, 17 A.2d 407, 409 (1941).
>
> Imposing a fee upon [Weaver] to pay $10,000 if he decided to file a modification of child custody is against the

public policy of assuring continuing contact between child and parent. It substantially impairs the Court's power and the Commonwealth's duty to determine what is in a child's best interest. "Our paramount concern in child custody matters is the best interests of the children." _Yates v. Yates_, 963 A.2d, 535, 539 (Pa. Super. 2008). It is against public policy to impose a fee on one party in order to determine the best interest of the child.

[Huss] argues that the $10,000 is a fee imposed upon [Weaver] to help [Huss] pay or fund the cost of custody litigation. The contract, however, does not state this. No contractual language remotely resembles such a claim. The contract simply places a burden of a $10,000 charge upon [Weaver], payable to [Huss], each time he were to file a "complaint, motion, petition or other similar pleading seeking modification…" of custody. There is no ambiguity in any manner and, therefore, the parol evidence rule would apply; [Huss] would not be able to testify about … the intention of the $10,000 fee. "The court might consider extrinsic or parol evidence to determine the parties' intent only where the language of the agreement is ambiguous." _Step Plan Services v. Koresko_, 17 A.2d 401, 409-410 (Pa. Super. 2010).

The Court finds that the agreement places impediments upon [Weaver] with respect to his relationship with his child and his child's best interest. Evidence of this would be the clause that restricts [Weaver] from filing for child support if he were to have primary custody, as well as requiring him to pay $10,000 if he were to file a custody modification. Certainly, custody litigation can be costly. The contract, however, acknowledges [Huss'] success at her profession as a real estate agent such that she is "capable of earning large commissions." Therefore, this Court finds [Huss'] argument to be specious and bordering on disingenuous.

[Huss] cites to _Ferguson_ to support her claim that the contract is valid. _Ferguson v. McKierna_, _supra_. In _Ferguson_, the Supreme Court concluded that the contract entered into between two persons (male sperm donor and woman who was artificially inseminated via IVF) was not against public policy. The contract forbade donor to seek custody of the child and forbade mother from seeking child support. Five years after the birth, mother sought child support against the sperm donor. _Id_.

The Pennsylvania Supreme Court found the contract to be valid and not against public policy, ruling that the only difference between this situation and those persons proceeding through a sperm bank was that the parties knew each other. This difference reveals "no obvious basis for analyzing this case any differently than we would a case involving an institutionally arranged sperm donation." *Id.* at 95, 1247.

The public policy issue before the Supreme Court did not surround the facts of *Ferguson*; the public policy issue concerned whether a sperm donor, whose sperm is used through artificial insemination or IVF to impregnate a woman, having negotiated an agreement outside the context of a romantic relationship to free themselves of financial and custodial obligations, under anonymous circumstances, should be required to pay child support based upon *Knorr*. To that, the Supreme Court said no. Therefore, it concluded that under identical circumstances, except the parties knowing each other, there was no material difference. [*Ferguson*] is not on point to this case. The Court finds that *Ferguson* concerns the public policy surrounding sperm donors, not the public policy of encouraging contact with parents and focusing on the best interests of a child.

Finally, [Huss] alleged that [Weaver] fraudulently induced her to enter a contract that is not enforceable. Assuming that is true, [Huss] cannot point to any real damages. [Weaver] has the absolute right to file a custody action or any modification thereof, as well as child support. The law does not prevent him from doing so. A parent should not be afforded an opportunity to economically quantify his or her losses in disputes regarding children for several reasons. First, in a custody action, the Courts are charged to determine a child's best interest and that is the focus of the Court's function; it is not determining the effects of its findings upon the parents. 23 Pa. C.S.A. § 5328(a). Second, if one parent were contractually charged to pay for the other parent's counsel fees, there would be a chilling effect on parents filing complaints or modification petitions. *In re S.H.*, 71 A.3d 973 (Pa. Super. 2013) ("the right to make decisions concerning the care, custody and control of one's children is one of the oldest fundamental rights protected by the Due Process Clause of the United States Constitution"). Further, the state's "compelling interest to protect children" would be impaired. *Shepp v. Shepp*, 588 Pa. 691, 705, 906 A.2d 1165, 1173 (2006). The only circumstance in which a parent should be able to

calculate a financial loss is when a statute permits a claim for counsel fees. *See* 23 Pa. C.S.A. § 4351(a); 42 Pa. C.S.A. § 2503(7); <u>Hopkins v. Byes</u>, 954 A.2d 654 (Pa. Super. 2008) (awarding counsel fees due to mother's violation of amended consent custody agreement by preventing father from seeing child).

Opinion Order, 9/25/13, at 2-5.

The Domestic Relations Code provides:

**(a) Best interest of the child.—**Upon petition, a court may modify a custody order to serve the best interest of the child.

23 Pa.C.S.A. § 5338. A petition for modification of a child custody order may be filed at any time. ***Martin v. Martin***, 562 A.2d 1389 (Pa. Super. 1989), *appeal denied*, 574 A.2d 70, 524 Pa. 629. We have explained:

Unlike other judgments or decrees, an order of custody is a unique and delicate matter. It is never final, but is considered temporary in nature, subject to constant review and modification. Because the State has a duty to protect the children's best interests and welfare, it may always entertain an application for modification and adjustment of custodial rights. The right to oversee the interests of children within this Commonwealth is of paramount importance.

***Friedman v. Friedman***, 307 A.2d 292, 295 (Pa. Super. 1973).

Huss and Weaver may petition for custody modification at any time. Huss characterizes the "$10,000 clause" of the parties' Agreement as providing her with a "defense fund" in the event that Weaver pursues custody modification. *See* Appellant's Brief at 12,13, and 19. The trial court recognized that "the contract does not state this." Trial Court Opinion Order, 9/25/13, at 3. Our review confirms, and the Majority agrees, Majority at 12,

- 6 -

that the "$10,000 clause" does not use the term "defense fund", and simply references the $10,000 as "payment for each modification or amendment sought." Although Huss describes the $10,000 payment for each custody modification filing as representing a "defense fund", it may more readily and logically be construed as punitive and a deterrent to Weaver in pursuing custody modification. ***Regardless, the "$10,000 clause" implicates the best interests of the parties' child because of its potential to influence Weaver in seeking custody modification.***

The custody law of this Commonwealth is inviolable. Here, the "$10,000 clause" is connected inexorably to Weaver's right to seek custody modification. It is axiomatic that in child custody matters, "the paramount concern is in the best interests of the child." ***J.R.M. v. J.E.A.***, 33 A.2d 647, 650 (Pa. Super. 2011). In addition, child custody agreements by parents, while encouraged, will always be subject to being set aside, as courts will not be bound by such agreements. ***Miller v. Miller***, 620 A.2d 1161, 1165 (Pa. Super. 1993). Here, the circumstances surrounding the drafting and execution of the parties' Agreement are dubious, but also irrelevant to our analysis. In this instance, I conclude that the trial court properly invoked the child's best interests and public policy in finding that the Agreement was unenforceable and sustaining Weaver's preliminary objections. Because I find no error by the trial court, I would affirm its order.