J-E03001-15

2016 PA Super 24

| AMY HUSS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JAMES P. WEAVER | |
| Appellee | No. 1703 WDA 2013 |

Appeal from the Order Entered September 25, 2013
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2013-1209

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J.,
SHOGAN, J., LAZARUS, J., OTT, J., STABILE, J., and JENKINS, J.

DISSENTING OPINION BY JENKINS, J.:          **FILED FEBRUARY 05, 2016**

I respectfully dissent.  I would affirm the trial court's order sustaining James P. Weaver's preliminary objections and dismissing Amy Huss's complaint seeking enforcement of the parties' agreement.  Although rights involving child custody and visitation belong to the parents, these rights are limited to those which serve the best interest of the child.  A child has a right to a custody arrangement that meets his or her best interests.  In my view, a contractual provision that potentially hinders or chills an interested party's ability to ensure a custody arrangement that is in the child's best interest is against public policy and unenforceable.

In October 2008, Huss and Weaver entered into a contract ("Agreement") which outlined the custody and visitation rights of their potential future children.  The Agreement provided that if Weaver sought to

modify the contract terms, he would be required to "pay Huss $10,000.00 for each modification or amendment sought." Amended Complaint, 4/19/13, at ¶ 3 (Exhibit A).

In November of 2010, the parties' son was born. In December 2010, Weaver filed a complaint for custody. In March 2013, Huss filed a complaint alleging Weaver breached the 2008 contract. Weaver filed preliminary objections. Huss filed an amended complaint and Weaver filed preliminary objections to the amended complaint arguing, *inter alia*, that the provision requiring Weaver to pay Huss $10,000.00 for each modification or amendment of custody sought violated public policy. The trial court granted Weaver's preliminary objections and dismissed Huss's complaint. The majority reverses this determination.

In **Knorr v. Knorr**, the Pennsylvania Supreme Court held:

> Parties to a divorce action may bargain between themselves and structure their agreement as best serves their interests, [**Brown v. Hall**, 435 A.2d 859 (Pa.1981)]. They have no power, however, to bargain away the rights of their children, [**Sonder v. Sonder**, 549 A.2d 155 (Pa.Super.1988)]. Their right to bargain for themselves is their own business. They cannot in that process set a standard that will leave their children short. Their bargain may be eminently fair, give all that the children might require and be enforceable because it is fair. When it gives less than required or less than can be given to provide for the best interest of the children, it falls under the jurisdiction of the court's wide and necessary powers to provide for that best interest. **Id.** It is at best advisory to the court and swings on the tides of the necessity that the children be provided. To which the *inter se* rights of the parties must yield as the occasion requires.

588 A.2d 503, 505 (Pa.1991) (footnotes omitted). In **Knorr**, the Court found it was not bound by the parties' agreement regarding child support payments. **Id.** at 505.

Equally as important to a child as monetary support, if not more so, is a custody arrangement that meets his or her best interests. Parents are free to enter into agreements regarding custody and visitation.[1] **Miller v. Miller**, 620 A.2d 1161, 1165-66 (Pa.Super.1993). However, a court is not bound by, and may set aside, such agreements. **Id.** In child custody

_____

[1] This Court has described the usefulness of private custody arrangements as follows:

> First, most parents genuinely love their children, and it is reasonable to assume that the children's welfare is a vital consideration in the parents' decision to resolve their dispute by agreement. One major reason that parents agree on custody is to spare their children the trauma inherent in an adversarial hearing. Second, parents have a better informational base upon which to make a decision about custody. The adversarial process is an inadequate means to assemble sufficient 'facts' to resolve custodial disputes satisfactorily. Third, it is difficult to protect a child from the painful pull of divided loyalties when his parents fail to agree. Parental agreements help to preserve an atmosphere of at least superficial peace between parents and thereby facilitate a much easier and more meaningful future relationship between the child and the non-custodial parent.

**Miller**, 620 A.2d at 1164 (quoting **Witmayer v. Witmayer**, 467 A.2d 371, 374-75 (Pa.Super.1983)). Accordingly, the policy reasons that courts promote private agreements regarding custody include that the parents are likely to act in the best interests of the child and that it is in the best interests of the child to have an amicable resolution.

proceedings, courts are charged with the task of designing a custody arrangement that is in the child's best interest.  23 Pa.C.S. § 5328(a) ("[i]n ordering any form of custody, the court shall determine the best interests of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child").  The focus is on the child, not the parent.  *See id.*  Further, it is axiomatic that in child custody and visitation matters, "the paramount concern is the best interests of the child." *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa.Super.2011) (quoting *Durning v. Balent/Kurdilla*, 19 A.3d 1125, 1128 (Pa.Super.2011)); *see also Dorsey v. Freeman*, 652 A.2d 352, 353 (Pa.Super.1994) (determination of "what will serve the best interests of the child . . . may never be subordinated to other considerations such as 'fundamental rights and fair play.'"); *Nonnenman v. Elshimy*, 615 A.2d 799, 801 (Pa.Super.1992) ("in matters of custody and visitation, the ultimate consideration for the court is a determination of what is in the best interest of the child, and all other considerations are deemed subordinate to the child's physical, intellectual, moral, and spiritual well-being"); *Mumma v. Mumma*, 550 A.2d 1341, 1343 (Pa.Super.1988) ("although entitled to be considered, [private custody agreements] must always give way where the best interests of the child suggest an alternate custody arrangement"); *Com. ex rel. Doberstein v. Doberstein*, 192 A.2d 154, 156 (Pa.Super.1963) ("It is basic and fundamental that the paramount consideration is the welfare of the children and that all other considerations, including the rights of parents, are

subordinate to the children's physical, intellectual, moral, spiritual and emotional well[-]being.").[2]

Both the courts and the Commonwealth have a duty to ensure a child's best interests are met by any custody agreement. We have found that it is a court's "responsibility to look to the best interest of the child" and the court's "duty to protect the rights and interests of children" when called upon to determine a custody issue. *Miller*, 620 A.2d at 1164, 1165. Further, the Commonwealth "is charged with the duty of protecting the rights and interests of the children."[3] *Miller*, 620 A.2d at 1165 (quoting *In re Williams L.*, 383 A.2d 1228 (Pa.1978)).

A contractual provision that impedes the trial court's ability to review a custody or visitation arrangement is against public policy and unenforceable.

_____

[2] A parent has a fundamental right to make "decisions concerning the care, custody, and control of [his or her] children." *In re S.H.*, 71 A.3d 973, 980 (Pa.Super.2013). This does not mean, however, that only a parent has a right to custody and visitation. A parent can lose his or her right if it would not be in the best interest of the child, i.e., the child's right to live in an environment that provides for his or her best interests can outweigh a parent's custody rights. *See id.* ("fundamental right of parents to the care and custody of their children **when that care and custody serves the best interests of the children**" (emphasis provided)).

[3] "The source of the state's authority to intervene in family matters to protect minor children has been said to be the doctrine of *parens patriae*, the concept that the sovereign is the father of his country." *In re Williams L.*, 383 A.2d at 1235-36. This authority would not apply to a typical custody arrangement, but it supports the strong public policy of Pennsylvania to promote custody arrangements that are in a child's best interests.

*Cf. Kraisinger v. Kraisinger*, 928 A.2d 333, 345 (Pa.Super.2007) (contract provision invalid where it "penalizes mother for, and therefore would act to discourage her from, seeking a court's review of the parties' agreement as to child support"); *see also Ferguson v. McKiernan*, 940 A.2d 1236, 1245 n.16 (Pa.2007) (a contract is against public policy where the policy "is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy].")

The majority attempts to distinguish *Knorr*. It reasons that *Knorr* addressed a child's right to adequate child support payments and, unlike child support payments, any right to custody and visitation belong to a parent, not a child. Majority, at 9-10. However, as stated above, the right of parents to craft a custody arrangement is always subject to the child's right to a custody plan that serves the child's best interests. There is no reason to treat custody actions differently than child support actions, as the goal of both is to ensure that a child's best interests are met. *Miller*, 620 A.2d at 1166 (finding the Supreme Court of Pennsylvania's determination of "court's role in enforcing [child support] agreements equally applicable to custody matters"); *see also Knorr*, 588 A.2d at 508 (noting that when a child support agreement "gives less than required or less than can be given to provide for the best interest of the children, it falls under the jurisdiction of the court's wide and necessary powers to provide for that best interest").

The majority asserts the "issue of whether a provision in a custody/visitation contract that places a serious impediment on either party's ability to seek court modification in the best interest of the child is not presently before this Court." Majority Opinion at 12. It reasons the contract does not provide that the provision is intended to discourage Weaver from seeking intervention or that the payment would act as an impediment to his ability to do so. *Id.* The majority claims whether it would be an impediment would depend on Weaver's ability to pay the $10,000.00 fee. *Id.* The majority notes the contract states Weaver is "an attorney capable of earning a large salary," Weaver recognized the Agreement's terms were "fair, just, and reasonable," and he agreed that he voluntarily executed the agreement. *Id.* The majority further notes that it is unclear whether the parties intended to provide Huss with a defense fund.[4] *Id.* at 13.

The circumstances surrounding the drafting of the provision requiring a $10,000.00 payment are irrelevant to the analysis. Rather, any provision that requires payment to the other party for filing actions or motions to ensure that a child's best interests are met, is unenforceable. Regardless of

_____

[4] A statutory right to counsel fees exists where "[a]ny participant . . . is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter." 42 Pa.C.S. § 2503(7).

Weaver's income or his ability to make a "large salary," a provision that would potentially prevent him from filing, or make him question his ability to file, an action to ensure a child's best interests, is against public policy.[5]

I believe the child's right to a custody arrangement that provides for his or her best interests is paramount, and therefore the contract provision requiring payment of $10,000.00 for any "modification or amendment" to custody or visitation sought is against public policy and unenforceable.

I would find that the trial court did not err and would affirm its order overruling the preliminary objections and dismissing the complaint.

_____

[5] That this case is at the preliminary objection stage does not affect my analysis. I believe we must grant prospective relief from a contract provision requiring payment for seeking custody modification. That a party may, at some future date, receive relief from the contractual fee provision, does not alter that the fee provision could deter a person from seeking a custody arrangement that meets a child's best interests. Under the majority's rationale, if Weaver did not have the $10,000.00, he would be faced with a choice: (1) file a petition, knowing he could not abide by the contract terms, and then be forced to expend additional funds in a breach of contract action to establish that enforcement of the provision acted as an impediment to seeking custody modification in the best interests of the child; or (2) not file a petition to modify custody or visitation because he did not have the funds to pay the fee knowing that the custody arrangement was falling short of meeting the child's best interest. Therefore, such a provision could prevent court review of custody arrangements and allow a child to remain in a custody arrangement that does not meet his or her best interests.