J-S37014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JESSICA BAKER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RYAN JOSEPH BAKER | : | |
| | : | |
| Appellant | : | No. 1130 EDA 2025 |

Appeal from the Order Entered May 22, 2025
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2019-60902

BEFORE:   DUBOW, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                          **FILED JANUARY 7, 2026**

Appellant, Ryan Joseph Baker ("Father"), appeals *pro se* from the May 22, 2025 order[1] entered in the Bucks County Court of Common Pleas that, *inter alia*, found Father in contempt and confirmed the parties stipulated custody order.  In this appeal, Father raises challenges to both the April 16, 2025 order holding him in contempt as well as a stipulated custody order entered the next day, April 17, 2025, that modified not only custody but also his contempt sanctions.  Upon review, we conclude that the April 17, 2025

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Father filed a timely notice of appeal challenging an April 16, 2025 contempt "order" as well as an April 17, 2025 stipulated custody order.  Upon review, this Court observed that on April 16, 2025, after conducting a contempt hearing, the trial court docketed a Family Court Sheet rather than an order finding Appellant in contempt.  On May 14, 2025, this Court issued an order directing the trial court to correct its ministerial error with respect to its April 16, 2025 contempt disposition.  On May 22, 2025, the trial court complied.

stipulated custody order superseded the April 16, 2025 contempt order and, therefore, all challenges to the April 16, 2025 contempt order are moot. Moreover, because the parties agreed to the April 17, 2025 order, it is unappealable. Accordingly, we affirm.

The following factual and procedural history is relevant to this appeal. Father and Appellee, Jessica Baker ("Mother"), are parents to nine-year-old L.B. and eight-year-old C.B. (collectively, "Children"). They separated on May 15, 2019, while living in Arizona, after almost five years of marriage. During that time, Father struggled with alcoholism, was verbally and sexually abusive to Mother, was verbally and physically abusive to Children, and was unable to supervise Children properly. Mother obtained an order of protection in Maricopa County, Arizona, against Father and moved to Bucks County, Pennsylvania, to live with her parents. On July 3, 2019, Mother filed an Emergency Petition for Custody in Bucks County seeking joint legal and sole physical custody of Children. On September 23, 2019, the Superior Court of Arizona in Maricopa County entered a temporary order awarding Mother sole legal custody and primary physical custody and Father supervised partial physical custody of Children. On December 2, 2019, the Superior Court of Arizona granted Mother's motion to transfer venue to Bucks County, Pennsylvania. Father subsequently moved to Bucks County, Pennsylvania. On July 20, 2024, Father married Jessie Bisceglie-Baker.

In this highly contentious case, both parties have filed numerous petitions for contempt, petitions for emergency relief, and petitions to modify

custody. On January 22, 2024, the parties reached a custody agreement for Mother to have primary physical custody of Children and Father to have partial physical custody of Children on weekends until April of 2024 when Mother and Father would begin to share physical custody of Children. On June 17, 2024, Mother filed an Emergency Petition for Special Relief requesting that the court order Father to submit to a hair follicle alcohol screening test due to concerning behavior that Mother witnessed, including appearing at Children's school smelling of alcohol. Emergency Pet., 6/17/23, at ¶ 5-8. On June 20, 2024, Father filed a *pro se* "Counterclaim for Emergency PFSR" requesting that the court hold Mother in contempt and award him legal custody. On October 11, 2024, after a hearing and upon consideration of the 23 Pa.C.S. § 5328 custody factors, the court denied Father's request for legal custody and awarded Mother sole legal custody of Children, denied Father's petition for contempt, ordered Father to pay Mother's attorney's fees, and ordered Father to submit to hair follicle testing for alcohol.

On October 31, 2024, Mother filed a contempt petition averring that Father failed to comply with hair follicle testing for alcohol. In response, Father filed a contempt petition against Mother prompting both parties to file numerous responses. On February 12, 2025, Mother filed a motion for a hearing date on her contempt petition. Father filed a motion to dismiss Mother's contempt petition, a motion for judicial reassignment, and various other motions. On April 16, 2025, the trial court held a hearing and found Father in contempt of the October 11, 2024 order compelling him to submit

to a hair follicle test for alcohol use after hearing testimony that, in October 2024, Father "shaved all the hair on his body, despite knowing that he was required to submit to a hair follicle test, and knowing such testing could utilize other body hair." Trial Ct. Op., 7/22/25, at 5. The court found, "[i]n his testimony, Appellant essentially acknowledged that he was aware since October 2024, at least, that he needed a requisite length of hair, from anywhere on his body, to obtain the hair follicle testing, yet he continued to shave all hair on his body and continued to cut his head hair extraordinarily short. This [c]ourt is of the belief that [Father] did this in an effort to avoid the testing." *Id.* at 22. The court ordered Father to immediately go to ArcPoint Labs and complete his hair follicle test before 4:00 PM that same day, or the court would impose a suspended sentence of 30 days incarceration, which would be purged upon Father submitting to the testing. Upon request from Father, the court suspended his incarceration sanction until noon on April 17, 2025, to allow Father and Mother the opportunity to come to a custody agreement.

On April 17, 2025, at the request of the parties, the court entered a stipulated custody order. In that stipulated custody order, the parties agreed that Mother would have sole legal and physical custody of Children until further notice. The parties also agreed that Father would register for Soberlink, submit to a complete and accurate Ethyl Glucuronide ("EtG") hair follicle test with a look-back period of six months, and that Father shall only be able to

file a petition for custody upon the production of an EtG hair follicle test showing zero alcohol intake.

Father timely appealed. Both Father and the trial court complied with Pa.R.A.P. 1925.

Father raises the following issues for our review:

1. Whether the trial court abused its discretion and committed an error of law by enforcing a stipulated custody agreement where Appellant's consent was not voluntary, knowing, or intelligent, and where the court failed to conduct an on-the-record colloquy to safeguard Appellant's due process rights.

2. Whether the trial court violated Appellant's due process rights by approving and enforcing a custody agreement entered under coercion, duress, and undue pressure, without a meaningful opportunity to consult independent counsel or understand the consequences.

3. Whether the trial court erred by refusing to hold an evidentiary hearing and failing to consider the statutory best-interest factors under 23 Pa.C.S. § 5328(a) before entering and enforcing the stipulated custody order.

4. Whether the trial court abused its discretion and violated Appellant's constitutional rights by ordering an EtG hair follicle test purporting to detect alcohol use dating back to July 1, 2024, a scientifically unsupported and physically impossible condition and by threatening incarceration for noncompliance.

5. Whether the trial court improperly bypassed the appellate process and exerted undue pressure on Appellant by asserting it could not modify custody due to a pending appeal yet could hold Appellant in contempt to compel abandonment or alteration of the appeal.

6. Whether the trial court abused its discretion by materially modifying custody and finding Appellant in contempt based on unsubstantiated accusations without competent evidence, relying solely on Appellee's claim of smelling alcohol more than a year earlier.

7. Whether the trial court demonstrated bias and the appearance of bias by retaliating against Appellant for exercising appellate rights, thereby depriving Appellant of a fundamentally fair proceeding in violation of due process.

8. Whether the cumulative effect of the trial court's errors, bias, and potential conflicts of interest requires vacatur of the orders entered and reassignment of the case to a different judge to ensure impartiality and the fair administration of justice.

Father's Br. at 10-12.

This Court reviews a custody determination "for an abuse of discretion, and our scope of review is broad." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). This Court will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016). This Court must accept the findings of the trial court that the evidence supports. *S.W.D.*, 96 A.3d at 400. Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *K.T. v. L.S.*, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere only where the "custody order is manifestly unreasonable as shown by the evidence of record." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

Likewise, we review a contempt order for a "clear abuse of discretion." *Chrysczanavicz v. Chrysczanavicz*, 796 A.2d 366, 368 (Pa. Super. 2002) (citation omitted). We give great deference to the trial court's discretion. *Id.* Our review is, thus, "confined to a determination of whether the facts support

the trial court's decision." ***Id.*** at 368-69 (citation omitted). Moreover, we likewise review a trial court's award of counsel fees for an abuse of discretion. ***A.L.-S. v. B.S.***, 117 A.3d 352, 361 (Pa. Super. 2015).

* * *

Father raises challenges to both the April 16, 2025 order finding him in contempt as well as the April 17, 2025 order entered by agreement. Upon review, we conclude that the April 17, 2025 order supersedes the April 16, 2025 order finding Father in contempt and ordering him to comply or serve jail time. The April 17, 2025 order discharges the possibility that Father will serve jail time and, instead, grants Mother full legal and physical custody of Children until Father complies with the hair follicle test. ***See*** Order, 4/17/25; Order, 5/22/25. Accordingly, any of Father's challenges regarding the court's April 16, 2025 finding of contempt, including issues four, five, and six, are moot and we decline to address them.

* * *

Moreover, we conclude that the April 17, 2025 stipulated custody order is not appealable. It is well settled that "[a] party who has acquiesced in an order or judgment will not later be heard to challenge it." ***R. Miller v. R.S. Miller***, 744 A.2d 778, 783 (Pa. Super. 1999) (quoting ***Karkaria v. Karkaria***, 592 A.2d 64, 71 (Pa. Super. 1991)). In other words, because Father agreed to the April 17, 2025 stipulated custody order, he cannot now challenge it on appeal.

Notably, "[b]ecause children are not mere chattel, agreements regarding custody and visitation are always subject to court review and adjustment in the best interests of the child." ***Huss v. Weaver***, 134 A.3d 449, 455 (Pa. Super. 2016). Parents are free to enter into agreements regarding custody and visitation. ***L.J. Miller v. R.E Miller****,* 620 A.2d 1161, 1165–66 (Pa. Super. 1993); ***see also*** Pa.R.Civ.P 1915.7. However, a trial court is not bound by, and may set aside, such agreements if they do not serve the child's best interest. ***Id.***

Here, Father fails to raise any challenge that the April 17, 2025 stipulated custody order was not in Children's best interests.[2] Instead, he asserts that he entered the agreement under fraud or duress and argues that the trial court abused its discretion in entering the stipulated custody order. Father's Br. at 10-12. Father contends that it is an abuse of discretion for a court to uphold a custody agreement that is made under duress or coercion, but he fails to support this argument with any relevant and valid legal authority. We observe that Father references case law to bolster his

_____

[2] We note that Father asserts generally that the trial court failed to hold a hearing and consider the Section 5328 custody factors prior to entering the stipulated custody order, but he fails to raise a challenge that the stipulated custody order is not in Children's best interest. Father's Br. at 41. While a court can reject a stipulated custody order if it is not in a child's best interest, it is not necessary for a court to conduct an evidentiary hearing and consider the Section 5328 factors, when presented with a stipulated custody order that the parties agreed to. ***See*** Pa.R.Civ.P. 1915.7 (regarding consent orders); ***see also S.P. v. B.S.****,* 2019 WL 210411, at *3 (Pa. Super. 2019) (non-precedential memorandum) (explaining that a court does not have to consider the Section 5328 custody factors and conduct a hearing if the parties agree to a stipulated custody order).

arguments, but the citations appear to be fabricated and do not correspond to actual cases that support his position. *See* Father's Br. at 20, 30, 31, 33, 40.

In sum, the April 17, 2025 stipulated custody order superseded the court's April 16, 2025 contempt disposition and, therefore, all challenges to the contempt order are moot. Moreover, because Father agreed to the April 17, 2025 stipulated custody order—and failed to raise a challenge that the order was not in Children's best interests—it is unappealable, and we, thus, affirm the order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/7/2026